156

**UNITED STATES of America**

v.

**Ernest T. WALDIN.**

**Civ. A. No. 15625.**

United States District Court
E. D. Pennsylvania.

July 23, 1951.

Gerald A. Gleeson, U. S. Atty., James P. McCormick, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Benjamin R. Donolow, Philadelphia, Pa., for defendant.

GANEY, District Judge.

Section 4047(e) (10) of the Internal Revenue Code, Title 26 U.S.C., provides: "Every officer or agent appointed and acting under the authority of any revenue law of the United States—

&ast; &ast; &ast; &ast; &ast;

"Who demands, or accepts, or attempts to collect, directly or indirectly, as payment or gift, or otherwise, any sum of money &ast; &ast; &ast; for the compromise, adjustment, or settlement of any charge or complaint for any violation or alleged violation of law, except as expressly authorized by law so to do—shall be dismissed from office, shall be fined not less than $1,000 nor more than $5,000, and be imprisoned not less than six months nor more than three years".

In a single count, the defendant was indicted under this section for both demanding of, and accepting from Francesco Mogavero, $20,000 as payment for the settlement of an alleged violation of law. He was tried before a jury and found guilty. He has filed a motion for judgment of acquittal and asks, in the alternative, for a new trial.

The facts, looked upon in the light most favorable to the government, are as follows: In the early part of 1949, Francesco Mogavero, a medical doctor, was under investigation by agents of the Bureau of Internal Revenue concerning his income tax returns. From unreliable sources, he was led to believe that he was in serious trouble. His attorney attempted, without success, to ascertain if the Bureau of Internal Revenue believed that there was a discrepancy in his returns, and if so, its extent, and also if there was any belief that fraud was involved on the part of the taxpayer. The attorney therefore called upon the defendant, a zone deputy collector of the Bureau, to see if the latter could obtain the desired information. In the latter part of April of 1949, he introduced the defendant to the doctor at his office located at 1930 Chestnut Street, Philadelphia. The purpose of this meeting was to have the defendant assure the doctor of the falsity of a telegram, shown to him by a third party, purporting to be from the United States Attorney in Washington, D. C., and indicating that he was to be indicted for income tax evasion. Although the attorney advised him that he was not to be paid for his services, the defendant stated that he would try to get the information.

In August of that year, in a telephone conversation with the attorney, the defendant confirmed the story related by a person named "McDougal" that the only way out was to have the doctor pay a certain "group" $20,000, otherwise the doctor would be indicted for income tax fraud, and his name would be "spread all over the paper". The attorney emphatically replied that he would advise his client not to pay any money to "them".

On September 13, 1949, the defendant went to the doctor's office at 1930 Chestnut Street, and told him that he now had the right connections, but it would cost him money. For the latter reason, he advised the doctor to drop his present attorney. He then told the doctor that a person by the name of "Bill" would telephone him at his South Fifteenth Street office the following morning.

The next day, the defendant went to the doctor's office on South Fifteenth Street and while he and the doctor were waiting for "Bill's" call, he told the doctor that his income tax affairs were in serious condition but "the group" will quash the indictment and show him the amount which he must pay on his prior income tax returns. When the telephone rang, the doctor answered it. The call was for the defendant. He therefore handed the telephone to the defendant. After a short time, the defendant in turn handed the telephone to the doctor and said: "This is Bill". When the doctor completed his telephone conversation, he told the defendant that "Bill" wanted $20,000 in cash. Since the doctor appeared doubtful whether he would pay the money, the defendant said that he would telephone him in the evening to ascertain if he would comply with the demand. He advised the doctor, in the meantime, to call the authorities of the hospital with which he was professionally connected. On the same day the hospital authorities referred him to Walter B. Gibbons, Esquire, a prominent Philadelphia attorney.

At 7 P.M. of the same day, the defendant telephoned the doctor to learn of his decision. The doctor told him that he would pay "them" $15,000 instead of $20,000. The defendant replied: "As far as I am concerned, I want no parts of this, but I will talk to *Bill* to find out whether *they* will take $15,000 or not". Twenty minutes later the defendant called the doctor and told him that "Bill" had to talk it over with "the group", that he could not give him any information until "Bill" had conferred with "the group", and that he would telephone him at a later date.

Subsequently an associate of Walter B. Gibbons, Esquire, introduced the doctor to Alfred W. Fleming, special agent

in charge of the Philadelphia division of the Intelligence Unit of the Bureau of Internal Revenue, and special agent Edward A. Hill. After the doctor had told them what had transpired, the agents requested him to follow the defendant's instructions with respect to the payment of money, but he was asked to report all future developments to Mr. Hill or to Mr. Gibbon's associate.

On September 18, the defendant telephoned the doctor and told him that "the group" would not accept less than $20,000. The doctor asked him how "they" wanted the money. Defendant's reply was that he would let him know at a later date. Ten days later, the defendant called the doctor by telephone and told him that "the group" wanted the $20,000 in denominations of twenties, fifties and hundreds, and made arrangements to pick up the money on October 7, 1949, at the doctor's South Fifteenth Street office.

On October 7, 1949, when the defendant came to the doctor's office, three agents of the Bureau were stationed in the house, two in the cellar and one on the second floor. The doctor invited him into the examination room and closed the door with a bang. This was a prearranged signal for the two agents in the cellar to ascend to the first floor and take positions outside the examination room where they could hear the conversation between the doctor and the defendant. Then the doctor took the package containing the $20,000 and said in a loud voice: "Ernie, here is the money". The defendant responded, "I guarantee there will be no indictment, we are going to quash that. If you have a high tax liability, we are going to cut that down for you". With that, the defendant opened the door leading into the waiting room. As he was entering the hallway outside the waiting room and upon seeing the agents coming toward him from the opposite end of the hallway, he dropped the package containing the money. The agents immediately apprehended him.

In addition to the fact that the doctor's residence and offices were not located in the zone in which the defendant was asigned to work by his superiors, the defendant did not have the legal authority to compromise, adjust or settle alleged tax discrepancies or violations of the tax laws; his duties were to collect delinquent taxes and check book accounts. Prior to the defendant's arrest, the doctor did not know that the defendant was employed by the Bureau of Internal Revenue.

■■ In support of his motion for judgment of acquittal, the defendant contends that before an agent of the Bureau of Internal Revenue can be found guilty under Sec. 4047(e) (10) of the Internal Revenue Code, the government must prove that at the time the agent demanded or accepted the money he must be acting under the authority of the revenue laws. Against the motion, the attorney for the government argues that the agent need not be acting under the authority of law at the critical time in order to convict him. In other words, he maintains that the words: "and acting under the authority of any revenue law of the United States" in the code means, "and during his appointment". We cannot agree. The words of the section are plain. Before an agent can be convicted under it, he must have authority, or at least color of authority, to compromise, adjust or settle the taxpayer's violation or alleged violation of law. It is true that such an interpretation makes this section a duplication of 18 U.S.C. § 202, concerning the acceptance of solicitation of money by employees of the United States for the purpose of having his decision or action in a matter influenced thereby. But we think the greater penalty under Section 4047(e) (10) may have been one of the reasons why this particular section was not repealed by the criminal code of 1948.

■ Since the defendant in the instant case had no authority or color of

authority to compromise, adjust or settle the taxpayer's alleged violation of law, he cannot be indicted under this statute. This conclusion is reached with extreme reluctance, as the defendant's conduct throughout was extremely reprehensible.

The motion for judgment of acquittal must be allowed.

The motion for new trial is denied.