**UNITED STATES of America**

v.

**Ernest T. WALDIN, Appellant.**

**No. 12276.**

United States Court of Appeals
Third Circuit.

Argued Nov. 22, 1957.

Decided Feb. 14, 1958.

Rehearing Denied April 9, 1958.

BIGGS, C. J., and KALODNER and HASTIE, JJ., dissented.

552

Benjamin R. Donolow, Philadelphia, Pa., for appellant.

Alan J. Swotes, Asst. U. S. Atty., Philadelphia, Pa. (Harold K. Wood, U. S. Atty., Alan J. Swotes, Asst. U. S. Atty., Philadelphia, Pa., on the brief), for the United States.

Before GOODRICH, McLAUGHLIN and HASTIE, Circuit Judges.

GOODRICH, Circuit Judge.

This is an appeal by a defendant who was convicted of violating § 4047(e) (4) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 4047(e) (4). The most important question raised is whether on the facts proved in the case for the government a verdict of guilty under this subsection can be sustained.

The defendant, at the time of the acts charged against him, was a deputy collector for the Bureau of Internal Revenue. His business was to collect unpaid taxes owed by taxpayers in the zone in Philadelphia to which he was assigned. By virtue of his position he had no authority to compromise or settle claims, nor did he have any authority to have anything to do with the accounts of taxpayers who resided outside his district. The proof adduced by the government against the defendant was that he conspired with persons unknown to induce a taxpayer, named Dr. Mogavero, to pay $20,000 in cash to the defendant and others in order to forestall the prosecution for income tax evasion which the doctor was given to understand was to be brought against him. Dr. Mogavero did not live in the district where defendant operated. It was not shown that either defendant or any of the persons alleged to be involved in the conspiracy had any authority to settle cases, stop prosecutions or furnish other of the alleged protective devices that the doctor was offered. But the evidence presented could lead to the conclusion that an object of the conspiracy was improperly to influence government officials who did have the capacity to do these things, and that at the very least the defendant himself was corrupted as a result of the illegal agreement. There was testimony, also, which the jury could believe, that the conspiracy reached the place where $20,000 in cash was actually put by the doctor into the defendant's hands just before the latter was apprehended.

On these facts may the conviction of the defendant be sustained? Section 4047(e) lists ten "unlawful acts of revenue officers or agents." They differ in

description and it is a dangerous generalization to say that the same rules apply to all of them.[1] For instance, clause (1) describes, as a subject for punishment, an agent "who is guilty of any extortion or willful oppression under color of law." Clause (3) penalizes an officer "who willfully neglects to perform any of the duties enjoined on him by law."

Clause (4) is the one here concerned. The opening words of § 4047(e) describe the persons to whom (e) is applicable. The words are: "Every officer or agent appointed and acting under the authority of any revenue law of the United States * * * " The words of clause (4), with which we are involved here, are: "Who conspires or colludes with any other person to defraud the United States * * *" Then follow other provisions, with the penalty of fine and imprisonment specified in the closing lines of the section.

■■ That a conspiracy to stop prosecution for tax violation and to corrupt government employees is a conspiracy to defraud the United States we think no one would doubt. But can a revenue agent who has no official authority to start or stop a prosecution or, as a matter of fact, to do anything affecting a particular taxpayer's account, violate the section when he does what the jury could have found the defendant did here in concert with strangers totally outside the service? We think that it is enough that a defendant who is in fact a revenue officer shows his own corruption or intent to corrupt the service by participating in an unlawful project which concerns an internal revenue matter.

■ A similar argument is made that, notwithstanding actual authority, in order to give the phrase "officer or agent appointed or acting under the authority of any revenue law" full effect, it should be interpreted to mean that the agent at least must purport to act as a revenue officer at the time he enters into the conspiracy. To this there are two

answers. One is that even without the appellant's gloss the words themselves are not two ways of saying the same thing. A man may be appointed and not be acting either because he has not qualified or because he is away on sick leave or something of the kind. The other answer is that when the Congress meant to require that the revenue officer be acting under purported authority or color of authority it said so as it did in clause (1) which deals with extortion.

The point here involved is not settled by authority. Judge Ganey, when this defendant was prosecuted under clause (10) of the section, thought that under this clause for an agent to be convicted he must have had authority, or at least color of authority, "to compromise, adjust or settle the taxpayer's violation or alleged violation of law." United States v. Waldin, D.C.E.D.Pa.1951, 139 F.Supp. 156, 158. But the conduct described in that particular clause (10) is much more definite and narrow than the conduct proscribed in the clause which we are now considering.

Judge Lord, in an opinion rendered upon a motion to dismiss earlier in these proceedings (D.C.E.D.Pa.1956, 138 F. Supp. 791, 795–796), thought that the clause involved here was applicable to an agent whether he pretended to act in his capacity as agent or not and whether he made known his authority or purported authority to the taxpayer.

We think Judge Lord was right in holding this particular part of § 4047 applicable to a revenue agent who does the forbidden things. It is quite clear that subsection (e) of 4047 has to do with conduct forbidden to revenue officers and agents. It purports to impose sanctions for a departure from standards of conduct applicable to their offices. It covers quite a number of types of forbidden conduct. When the lawmakers wanted to put the requirement that the person act under color of office in order to commit the offense they said so. In other clauses the very nature of the for-

---

1. As was done in United States v. Gerdel, D.C.E.D.Mo.1952, 103 F.Supp. 635.

bidden conduct would involve a representation at least on the part of the agent that he was acting in his official capacity. This was Judge Ganey's case in the prosecution under clause (10).

But we think that the language describing conspiracy as forbidden conduct does not require any such qualifications and we do not think we should put it into the statute.

The point just discussed was squarely raised by counsel for the defendant in a requested instruction which said:

> "If you find beyond a reasonable doubt that there was in existence a conspiracy and that the defendant was one of the conspirators, you must find that any acts of the defendant were done while he was acting under the authority of his office before you can find the defendant guilty as charged of violation of 26 U.S.C.A. Section 4047(e) (4), and also you must find the defendant entered into the conspiracy while acting under the color of authority of his office."

Judge Grim, who tried the case, denied this request and in denying defendant's motion for a new trial relied upon what Judge Lord had decided, 138 F.Supp. 791, in denying the motion to dismiss, D.C. E.D.Pa.1957, 149 F.Supp. 912.

■ We agree with Judges Lord and Grim so far as clause (4) is concerned. The view we take makes it immaterial whether Dr. Mogavero believed or did not believe that the defendant was an agent of the department acting within his authority, was an agent of the department acting outside his authority, or was an agent at all. It is sufficient that the defendant was in fact a revenue agent at the time of what the jury found was the misconduct.

The defendant makes a further contention that error was committed when the judge did not strike out evidence relating to the payment of the $20,000.

When the defendant was tried under clause (10) before Judge Ganey, the money which was used in the transaction and a list of the serial numbers on the bills were in court and presented in evidence. In the meantime, the money had been returned to Dr. Mogavero and the list of serial numbers on the bills had been lost. Now defendant urges that if the money itself was not produced evidence concerning it should have been refused or stricken out.

At the trial there was testimony from three government agents about this money. They described going to the bank with Dr. Mogavero and getting the money, checking the amounts, making a list of the serial numbers, wrapping the currency in paper and giving the package to the doctor just a short time before the doctor handed it to the defendant. This testimony, it should be emphasized, came from the very persons who had done all these things with the money.

■ The only basis on which defendant's motion could be sustained is to allege that there is such a thing as a best evidence rule that requires in every law suit the best possible evidence to prove a given point. There is no such rule and all the modern authorities say so. The confusion got into the law when Baron Gilbert back in 1726 made some incautious statements broad enough to be the basis for misunderstanding of what "the best evidence rule" is. The rule itself is properly confined to writings and is so understood by all the well considered authorities.[2] It may well have been that had the money and the list been produced the testimony might have been stronger, although the jury found it strong enough. There was no error by the trial judge in this.

■ The defendant also complained of the refusal of the judge to give a requested instruction on entrapment. There are two answers to this objection. One is that any suggestion of entrapment on the evidence is so thin as to be

---

2. McCormick, Evidence §§ 195, 196 (1954); 4 Wigmore, Evidence §§ 1174(1), 1179–85 (3d ed. 1940).

almost fanciful. Another answer is that the instruction was phrased in terms which took the entrapment question out of the hands of the jury on an insufficient basis of fact. There is nothing to the entrapment point.

The judgment of the district court will be affirmed.

HASTIE, Circuit Judge (dissenting).

I dissent because, in my view, correct application of the doctrine of res judicata to the circumstances of this prosecution requires that an acquittal be directed.

The wrongdoing charged was a scheme to mulct a delinquent taxpayer under pretense of protecting him from governmental action, in the course of which appellant, a deputy collector of the Bureau of Internal Revenue, is said to have solicited and accepted money from the taxpayer. This occurred in 1949. From year to year, from 1950 to 1955, the government obtained a series of five separate indictments in a persistent effort to punish appellant for this misconduct.

Appellant was first indicted, tried and convicted in 1950 on a charge of accepting money to compromise a complaint of violation of law. But, for reasons to be discussed later, the trial judge thereafter granted a defense motion for judgment of acquittal. The same transaction was the basis of a second indictment in 1952 for illegally accepting compensation, and a third indictment of rather similar tenor a year later. These indictments were dismissed in 1953 and 1954. The fourth indictment to be based on this transaction, this time for conspiracy to defeat income taxes, was handed down in 1955. Later in 1955 a fifth indictment initiated the present prosecution for conspiracy to defraud the United States. A jury found the accused guilty as charged. The court then considered and denied a defense motion for judgment of acquittal which urged that the specific ruling upon which the 1950 acquittal had been based was conclusive and required acquittal in this subsequent prosecution.

This brings us to the identification of the specific matter which was so decided in the first prosecution as to require an acquittal, but was relitigated and decided against the accused as an essential element of the crime charged in the present case. That question is, whether, in the 1949 transaction which was the common evidentiary basis of both prosecutions, the accused was "acting under the authority of any revenue law of the United States." It was common to both prosecutions because the successive indictments were based on clauses (10) and (4), respectively, of the same subsection, § 4047(e) of the Internal Revenue Code of 1939, which reads as follows:

"(e) Other unlawful acts of revenue officers or agents. Every officer or agent appointed and acting under the authority of any revenue law of the United States—

\*　　\*　　\*　　\*　　\*　　\*

"(4) Who conspires or colludes with any other person to defraud the United States; or

\*　　\*　　\*　　\*　　\*　　\*

"(10) Who demands, or accepts, or attempts to collect, directly or indirectly, as payment or gift, or otherwise, any sum of money or other thing of value for the compromise, adjustment, or settlement of any charge or complaint for any violation or alleged violation of law, except as expressly authorized by law so to do—

shall be dismissed from office, shall be fined not less than $1,000 nor more than $5,000, and be imprisoned not less than six months nor more than three years."

It will be observed that while offenses under clause (4) and clause (10) are different crimes, they, like all other offenses under § 4047(e), have a common element, namely, the requirement, so stated at the beginning of the subsection as to qualify all of its clauses, that the offender must be an "officer or agent appointed and acting under the authority of any revenue law of the United

States." When the existence of this prerequisite status or relationship was challenged on the motion for acquittal after the guilty verdict in the first prosecution, the trial judge wrote an opinion explicitly stating the ground upon which he was directing an acquittal. He said:

"[T]he defendant contends that before an agent of the Bureau of Internal Revenue can be found guilty under Sec. 4047(e) (10) of the Internal Revenue Code, the government must prove that at the time the agent demanded or accepted the money he must be acting under the authority of the revenue laws. Against the motion, the attorney for the government argues that the agent need not be acting under the authority of law at the critical time in order to convict him. In other words, he maintains that the words: 'and acting under the authority of any revenue law of the United States' in the code means, 'and during his appointment'. We cannot agree. The words of the section are plain. Before an agent can be convicted under it, he must have authority, or at least color of authority, to compromise, adjust or settle the taxpayer's violation or alleged violation of law." United States v. Waldin, D.C.1951, 139 F.Supp. 156, 158.

Thus, the accused was acquitted on the specific ground that in the 1949 transaction he was not "acting under the authority of any revenue law of the United States."

Six years later, when the same factual picture of this individual's role and status in that transaction was shown as an essential part of the government's case in the present prosecution, the accused urged the earlier ruling in his favor on the same point as a ground for acquittal. The court, a different judge sitting, again considered the matter on its merits and, disagreeing with the earlier ruling, sanctioned a conviction. The court said:

"In a previous case in this court defendant was charged with and convicted of a violation of subsection (10) of 26 U.S.C.A. former Sec. 4047 in accepting illegally the $20,000 which apparently the jury in the present case also found that he accepted. The trial judge in the previous case granted judgment of acquittal, United States v. Waldin, D.C.E.D.1951, 139 F.Supp. 156. That acquittal, however, does not protect defendant from a conviction in the present case. In the present case defendant is charged with a conspiracy rather than a substantive crime and an acquittal on a charge of a substantive crime does not preclude a prosecution of a conspiracy to commit the same substantive crime." United States v. Waldin, 1957, 149 F.Supp. 912, 915.

The quoted language also seems essentially the position of the majority on this appeal. Its error, as I see it, is in treating a res judicata problem as if it were one of double jeopardy. The fact that the two contradictory rulings of the district court were made in prosecutions for different offenses, albeit based upon the same transaction, has force in preventing the second conviction from offending the constitutional guarantee against twice being put in jeopardy for the same offense. But the reach of res judicata in criminal cases is greater. Even though the successive prosecutions be for different crimes, a ruling favorable to the accused on the facts or the legal significance of a particular transaction in the one prosecution is conclusive in his favor on the same question concerning the same transaction in the second prosecution. See 2 Freeman, Judgments, 5th ed. 1925, § 648; Dangel, Criminal Law, 1951, § 187; Lugar, Criminal Law, Double Jeopardy and Res Judicata, 1954, 39 Iowa L.Rev. 317.

The courts have repeatedly stated this doctrine of res judicata in criminal cases. There is the plain statement in Frank v. Mangum, 1915, 237 U.S. 309, 334, 35 S.

Ct. 582, 590, 59 L.Ed. 969, that, in criminal cases as well as civil, "a question of fact or law distinctly put in issue and directly determined by a court of competent jurisdiction cannot afterwards be disputed between the same parties." So, a ruling, whether right or wrong, that a particular short statute of limitations has barred prosecution for certain misconduct, is res judicata. United States v. Oppenheimer, 1916, 242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161. True, the well known recent application of res judicata to a prosecution in Sealfon v. United States, 1948, 332 U.S. 575, 68 S.Ct. 237, 92 L.Ed. 180, involved an issue of fact. But the burden of the opinion is that res judicata applies to any issue actually decided, without any suggestion that it matters whether the litigants have contested a law point or a matter of evidence. So too, in this circuit, I understand the announced and considered rule to be broadly against the relitigation in a second prosecution of issues or matters of whatever sort actually decided in favor of the accused in an earlier prosecution. United States v. De Angelo, 3 Cir., 1943, 138 F.2d 466; United States v. McConnell, D.C.E.D.Pa.1926, 10 F.2d 977.

The prosecution, recognizing that it is in difficulty on this score, urges in its brief that so much of the judicially stated and repeatedly restated rule as applies to adjudication which has turned on a point of law is dictum in the cases and, therefore, that we should treat this question as one of first impression.[1] Of course, what is ordinarily called a ruling of law on an issue of criminal liability is not a pronouncement of doctrine at large, but a decision as to the legal significance of what happened on a given occasion. And whether the actual dispute concerns the operative facts or the legal rule applicable to them, or both, res judicata, if applicable at all, comprehends the particular matter decided; in this case that the accused did not act under authority of any revenue law in the 1949 transaction. It does not matter whether the controversial factor which determined this ruling was the court's evaluation of the evidence or its interpretation of the controlling language of the statute. The important thing is that the court ruled that an essential element of the crime, as stated in the statute, had not been established. The existence of that same element of criminality may not later be proved against the accused to subject him to liability for another offense charged on the basis of the same transaction.

We should not be distressed that this rule may occasionally, perhaps this time, permit a wrongdoer to escape punishment. For it is the deliberate choice of our open society to forego easy and sure convictions of crime—such as the police state can guarantee—in order that the never absent risk of unduly harassing or otherwise oppressive action by government may be minimized. We should rather be concerned that judges not relax the procedural safeguards of our system whatever the record may suggest as to the demerits of the accused.

1. This is what the government argues:
"The government concedes that it is unquestionably the law that the prosecution may be prohibited by the doctrine of res judicata from proving facts which were conclusively determined adversely to the prosecution by the verdict of the jury in a previous trial for a different offense arising out of the same transaction. We are not prepared, however, to admit that the same rule is applicable with respect to questions of law decided by the Court in an earlier proceeding. We are familiar with dicta in a long line of cases beginning with Frank v. Mangum, supra, which say that res judicata is applicable to questions of fact and law in criminal cases. However, we have been unable to find one case in which the doctrine was the basis for a Holding establishing conclusiveness of a decision on a legal issue by the Court in a previous trial for a different offense. We therefore respectfully submit that the question is one of first impression and should be treated as such by this Court." Appellee's Brief, pp. 24–25.

On Petition for Rehearing

Before BIGGS, Chief Judge, and MARIS, GOODRICH, McLAUGHLIN, KALODNER, STALEY and HASTIE, Circuit Judges.

PER CURIAM.

In a petition for rehearing the defendant raises for the first time the point that the statute of limitations bars this prosecution. There is good authority which holds that this objection comes too late when presented at this stage. Forthoffer v. Swope, 9 Cir., 1939, 103 F.2d 707; Pruett v. United States, 9 Cir., 1925, 3 F.2d 353; cf. United States v. Franklin, 7 Cir., 1951, 188 F.2d 182.

■ Regardless of timeliness, however, we think the contention has no merit. 26 U.S.C.A. § 3748 provides:

"(a) Criminal prosecutions. No person shall be prosecuted, tried, or punished, for any of the various offenses arising under the internal revenue laws of the United States unless the indictment is found or the information instituted within three years next after the commission of the offense, except that the period of limitation shall be six years—

"(1) for offenses involving the defrauding or attempting to defraud the United States or any agency thereof, whether by conspiracy or not, and in any manner,"

Paragraph (1) covers the charge here involved as the opinion of the court, filed February 14, 1958, shows.

In accord with our conclusion is United States v. Witt, 2 Cir., 1954, 215 F.2d 580, which the defendant believes to be wrong but which we think is right. Grunewald v. United States, 1957, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931, cited to us, was a prosecution under 18 U.S.C. § 371, and is not in point here.

■ The final question is whether § 201 of the Miscellaneous Title to the Internal Revenue Code of 1954, 68A Stat. 929, 26 U.S.C.A. § 3748(a) decreased the period applicable to violations of 26 U.S.C.A. § 4047(e) (4) from six to five years. We think not. We agree with the Government that the purpose was to increase the period of limitations from three to five years in certain instances, but not to decrease the limit as to those offenses which were already covered by the six-year limitation period. This is borne out by such legislative history as there is upon the point. See 100 Cong.Rec. 9490–92, 12532–34 (1954); H.R.Rep. No. 2543, at 86, 3 U.S.Cong. & Adm. News, 83d Cong., 2d Sess. 5438 (1954).

The petition for rehearing is hereby denied.

BIGGS, Chief Judge (dissenting).

The indictment charged the defendant-appellant with a conspiracy to violate Section 4047(e) (4), Title 26 U.S.C.A.[1] It was alleged that the conspiracy continued with the defendant-appellant as a party thereto up to and including October 7, 1949. The indictment was returned on September 20, 1955; therefore more than five and one-half years elapsed between the commission of the offense and the return of the indictment.

Section 3748,[2] 26 U.S.C.A. was amended on August 16, 1954 by Section 201(a), 68A Stat. 929, to read as follows:

1. The indictment also charged the defendant-appellant with other violations but those charges were not pressed and the court below restricted its charge to the conspiracy to violate Section 4047(e) (4), Title 26 U.S.C.A. This court is concerned therefore with the charge of the indictment last designated.

2. The section as originally enacted and quoted in the per curiam opinion was:

"(a) Criminal prosecutions. No person shall be prosecuted, tried, or punished, for any of the various offenses arising under the internal revenue laws of the United States unless the indictment is found or the information instituted within three years next after the commission of the offense, except that the period of limitation shall be six years—

"(1) for offenses involving the defrauding or attempting to defraud the United States or any agency thereof, whether by conspiracy or not, and in any manner,"

"(a) Criminal prosecutions. No person shall be prosecuted, tried, or punished, for any of the various offenses arising under the internal revenue laws of the United States unless the indictment is found or the information instituted within three years next after the commission of the offense, *except that the period of limitation shall be five years for offenses enumerated in section 4047 (e) (relating to unlawful acts of revenue officers or agents)* and except that the period of limitation shall be six years— [Emphasis added.]

"(1) for offenses involving the defrauding or attempting to defraud the United States or any agency thereof, whether by conspiracy or not, and in any manner,

\* \* \* \* \* \*

"(b) Scope of limitations. Subsection (a) of this section shall apply to offenses whenever committed; except that it shall not apply to offenses the prosecution of which was barred before June 6, 1932."

The *per curiam* opinion of this court concludes that the purpose of this amending section was to increase the period of limitations for those Section 4047(e) violations which had a three year period to five years, but was not intended to decrease the six year limitation period applicable to Section 4047(e) (4) violations to five years. The language of the Section as amended states, however, that the period of limitations shall be five years for Section 4047(e) violations, which include, of course, Section 4047(e) (4) violations. The face of the statute is unambiguous. The conclusion is that the applicable period of limitations should be deemed to be five years in the case at bar. Caminetti v. United States, 1916, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442; United States v. Mock, D.C. N.D.Cal.1956, 143 F.Supp. 661, 664.

The *per curiam* opinion, however, goes **one** step further and concludes that even if the applicable statute of limitations were five years, a defense based on the statute of limitations was waived by the defendant-appellant because he failed to plead or assert it specifically in bar. But statutes of limitations applicable to criminal offenses differ from statutes of limitations in civil actions. In civil actions statutes of limitations are deemed to be mere statutes of repose. In criminal actions statutes of limitations bar prosecution. Wharton, Criminal Evidence § 21; Dangel, Criminal Law § 107. It follows that the protection afforded by a criminal statute of limitations goes to the defendant's liability as a matter of substantive law. United States v. Oppenheimer, 1916, 242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161; United States ex rel. Hassell v. Mathues, D.C.E.D.Pa.1928, 27 F.2d 137. The burden of proving affirmatively that the crime was committed within a period not proscribed by the applicable statute of limitations is on the United States. Az Din v. United States, 9 Cir., 1956, 232 F.2d 283, 287; United States v. Schneiderman, D.C.S.D.Cal.1952, 106 F.Supp. 892. Accordingly, the authorities are clear that the statute of limitations need not be specifically pleaded, but is put in issue, in criminal cases, by a plea of not guilty. United States v. Brown, 24 Fed.Cas. p. 1263, No. 14,665; United States v. White, 28 Fed.Cas. p. 562, No. 16,676; United States v. Cook, 1813, 17 Wall. 168, 84 U.S. 168, 21 L.Ed. 538; Forthoffer v. Swope, 9 Cir., 1939, 103 F.2d 707; Housel and Walker, Defending and Prosecuting Federal Criminal Cases § 348. These authorities are applicable since the defendant-appellant entered a plea of not guilty on January 6, 1956. The view that the charge of the indictment is barred by the statute of limitations is therefore a clearly supportable one.

As to the issue of *res judicata,* a most important one, the views stated in Judge Hastie's dissent to the original opinion of this court filed February 14, 1958, seem unanswerable.

For the foregoing reasons I am of the opinion that the case should be reheard before the court en banc.

I am authorized to state that Judge KALODNER and Judge HASTIE join in this dissent.

