**UNITED STATES of America**

v.

**Claude C. WILD, Jr., Appellee.**

**No. 76-1622.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 20, 1976.

Decided Jan. 21, 1977.

Certiorari Denied May 16, 1977.
See 97 S.Ct. 2178.

John P. Lydick, Asst. Sp. Prosecutor with whom Charles F. C. Ruff, Sp. Prosecutor and Alan L. Adlestein, Asst. Sp. Prosecutor, Watergate Special Prosecution Force, Washington, D. C., were on the brief for appellant.

Cary M. Feldman, with whom William G. Hundley, Washington, D. C., was on the brief for appellee.

Before BAZELON, Chief Judge, TAMM and ROBB, Circuit Judges.

Opinion for the Court filed by Circuit Judge TAMM.

TAMM, Circuit Judge.

This is a case of first impression. The United States appeals from the district court's pretrial dismissal of Count II of the indictment against the defendant, Claude C. Wild, Jr., on the ground that the statute of limitations barred prosecution of that Count as a matter of law.[1] The United States contends on appeal that the defendant expressly waived his statute of limitations defense and that therefore the dismissal was in error. Wild, on the other hand, asserts that the statute of limitations is not a waivable defense, in that once it has run, a court is deprived of jurisdiction over the matter. We decide that where, as here, the defendant followed the advice of competent counsel and executed an express written waiver prior to the expiration of the statute of limitations, the district court was not without jurisdiction to try him upon his subsequent indictment.

## I. FACTUAL BACKGROUND

On November 13, 1973, the defendant (then vice-president of ·Gulf Oil Corporation) pled guilty to an information charging him with a single misdemeanor violation of 18 U.S.C. § 610.[2] The government, through the Watergate Special Prosecution Force

1. Count II of the indictment alleged that the defendant, in his capacity as an officer of Gulf Oil Corporation, wilfully consented to a corporate contribution on September 27, 1972, in connection with the election of Sam Nunn to the United States Senate, a violation of 18 U.S.C. § 610 (Supp. V 1975). Government Brief at 2 n. 1, 3 n. 4; J.A. at 4A–5A.

2. Title 18 U.S.C. § 610 (Supp. V 1975) provides in part:
    It is unlawful for any national bank, or any corporation organized by authority of any law of Congress, to make a contribution or expenditure in connection with any election to any political office, or in connection with any primary election or political convention or caucus held to select candidates for any political office, or for any corporation what-

ever. or any labor organization to make a contribution or expenditure in connection with any election at which Presidential and Vice Presidential electors or a Senator or Representative in, or a Delegate or Resident Commissioner to Congress are to be voted for, or in connection with any primary election or political convention or caucus held to select candidates for any of the foregoing offices, or for any candidate, political committee, or other person to accept or receive any contribution prohibited by this section.
    Every corporation or labor organization which makes any contribution or expenditure in violation of this section shall be fined not more than $25,000; and every officer or director of any corporation, or officer of any labor organization, who consents to any con-

(WSPF), reopened its investigation of the defendant and Gulf in 1975, ultimately concluding that Wild had not fully disclosed all of Gulf's contributions to federal officials during his previous encounter with the WSPF. Wild and his attorney, Leo T. Kissam, were notified of WSPF's position early in September of 1975, and on September 22, 1975, WSPF attorneys informed Kissam that they were prepared to seek an indictment against Wild for three violations of 18 U.S.C. § 610, one of which was the allegedly illegal contribution to Senator Nunn now at issue. Kissam was also told that the proposed indictment would be returned on September 26, one day before the statute of limitations would expire on the Nunn contribution. Plea bargaining then began, with the government seeking more information regarding illegal corporate contributions and the defendant seeking to avoid his indictment.

As Kissam did not consider himself sufficiently experienced in criminal law to proceed further as counsel for his client, both he and Wild sought assistance from attorney Edward B. Williams. Williams contacted the WSPF attorney in charge of Wild's case on September 25 to advise him that he would now be representing the defendant. Williams also stated that he realized that the statute of limitations would expire in two days, but that he nevertheless desired more time to prepare the case and explore a possible disposition with his client and the

WSPF. In return, he proposed that his client execute and deliver a written waiver of the statute of limitations. This was done, but since the WSPF attorneys had also prepared a similar waiver, Wild immediately signed that one too.[3] In light of this development, the WSPF decided not to proceed to the grand jury on September 26 as they had originally planned.

Williams visited the WSPF shortly thereafter and, in the hope that the WSPF might drop its plans to seek an indictment or, at least, reduce the number of charges, he raised the possibility of Wild's cooperative testimony. In November of 1975, a proffer of such testimony was actually made; however, Williams' partner who was handling the case subsequently advised the WSPF that he and his firm would have to withdraw from their representation of Wild due to a potential conflict of interest. Wild, therefore, once again set out to find new counsel.

Wild's present counsel, William G. Hundley (who has no connection with the Williams' firm), was informed by the WSPF of the defendant's waiver of the statute of limitations. Hundley continued the plea bargaining initiated by Williams, and after further negotiations, Wild was interviewed in the WSPF offices in December and January. These interviews laid the groundwork for the defendant's appearance before the grand jury under a grant of use immunity on January 27, 1976.

tribution or expenditure by the corporation or labor organization, as the case may be, and any person who accepts or receives any contribution, in violation of this section, shall be fined not more than $1,000 or imprisoned not more than one year, or both; and if the violation was willful, shall be fined not more than $50,000 or imprisoned not more than two years, or both.

Although Congress repealed this section on May 11, 1976, it included a savings provision in its repeal and transferred the substance of this section, after some rewording not pertinent here, to Title 2 U.S.C. § 441b, Pub.L. No. 94–283, Title I, § 112(2), 90 Stat. 492.

**3.** The text of this express waiver follows:

I have been advised by your office [WSPF] that a federal grand jury is presently investigating my alleged involvement in the making

of unlawful corporate campaign contributions by Gulf Oil Corporation and particularly my alleged involvement with respect to corporate contributions made in connection with the 1972 election campaign of Sam Nunn, a candidate for United States Senator from Georgia.

In consideration of your office's delaying any final decision with respect to charging me with any criminal violations in connection with the alleged contribution to Sam Nunn's campaign, a delay requested by me for my benefit, I hereby waive all defenses grounded upon the applicable statute of limitations with respect to the Nunn transaction. I have discussed this matter with my attorney, Edward Bennett Williams, Esq., and I fully understand the consequences of this waiver. J.A. at 9A.

On March 9, 1976, the WSPF, having made some minor changes to the earlier proposed indictment, advised Hundley that on March 12, 1976, it would request that the grand jury indict the defendant on two counts of violating 18 U.S.C. § 610. Wild evidently did not come forth with the testimony which the WSPF was seeking as he was subsequently indicted. The district court found Count II of this indictment, which referred to the Nunn contribution, to be barred by the statute of limitations in spite of the defendant's written waiver, and thus the court dismissed this charge. It is the propriety of this ruling which is now before us.

## II. WAIVER OF THE STATUTE OF LIMITATIONS

■ We have found no case precedent, nor has any been brought to our attention, which would apply precisely to the issue presented here, that is, whether a defendant, after consultation with his counsel, may waive the statute of limitations,[4] apparently in the hope that by so doing, he would escape prosecution as a result of plea bargaining.[5] The first step in our analysis, therefore, is to determine whether the statute constitutes a jurisdictional bar to prosecution or whether it is equivalent to an affirmative defense.

In an early Supreme Court case dealing with the nature of a statute of limitations containing language substantially the same as the one here, *United States v. Cook*, 17 Wall. 168, 84 U.S. 168, 21 L.Ed. 538 (1872),[6] the defendant demurred to his indictment on the ground that the crimes alleged therein appeared to have been committed more than two years before the filing of the indictment so that the statute of limitations

barred his prosecution. Unfortunately, the Court's analysis of this argument is clouded somewhat by the archaic language necessarily attendant on any discussion of the old common law forms of pleading. The Court's discussion essentially focused on the defendant's ability to raise the issue of the statute's bar by demurrer (which admitted every allegation pleaded but nonetheless demanded that the action be dismissed as, for instance, in a case where all the facts alleged are true but the court has no jurisdiction over the matter) rather than by special plea (which was a means of raising affirmative defenses such as those under Fed.R.Crim.P. 12(b) today). If one makes his way through all of the old terminology used in the opinion, one finds that the bottom line of the decision is that a demurrer was inappropriate because the statute of limitations is not an element of the offense and therefore, need not be alleged in the indictment; thus, the defendant must raise it as a defense. *Id.* at 178. The Court stated:

> Accused persons may avail themselves of the statute of limitations by special plea or by evidence under the general issue, but courts of justice, if the statute contains exceptions, will not quash an indictment because it appears upon its face that it was not found within the period prescribed in the limitation
> . . . . .

*Id.* at 179.

Thus, the Court found that the defendant had to raise the statute of limitations by special plea, or as an affirmative defense in today's terminology, in order that the government might have a chance to show that an exception tolling the statute applied

---

4. The particular statute of limitations which concerns us here provides in pertinent part:
   No person shall be prosecuted, tried, or punished for any violation of . . . section 610 . . . of Title 18, unless the indictment is found or the information is instituted within 3 years after the date of the violation.
   2 U.S.C. § 455(a) (Supp. V 1975) (current version at Pub.L. No. 94–283, Title I, § 115(F), 90 Stat. 496).

5. J.A. at 96A–97A.

6. No person shall be *prosecuted, tried,* or *punished* for any offence not capital, unless the indictment or information for the same shall be found or instituted within *two years* from the time of committing the offence . . . .
   *United States v. Cook*, 17 Wall. 168, 169, 84 U.S. 168, 169, 21 L.Ed. 538 (1872) (emphasis in the original).

to the particular defendant. Although the parties did not raise the issue, and the Court made no mention of the effect of the statute's expiration on a court's subject matter jurisdiction, it is clear that the Court considered the statute to be in the nature of a *defense* which must be raised by the defendant.[7]

The law of this circuit is consistent with Cook's view of the nature of the statute of limitations. In *Askins v. United States*, 102 U.S.App.D.C. 198, 251 F.2d 909 (1958), the defendant had been indicted for first degree murder, a capital offense having no statute of limitations, but convicted of second degree murder, a lesser included offense having a three-year limitation. After his conviction was affirmed on appeal, he filed a motion under 28 U.S.C. § 2255 (1970) to set aside his sentence, arguing for the first time that the indictment resulting in his conviction had been returned more than three years after the crime. The court ruled that the defendant could raise the limitation in this collateral attack on his second degree murder conviction even though he had not done so at trial because he "could not have objected to being tried on the indictment since it was for first degree murder, as to which there is no time limitation." *Id.* at 912. The court took care to note, however, that the case would be different were the statute of limitations applicable to the offense actually charged in the indictment (such as in the case *sub judice*) as opposed to a lesser included offense that remains only an implicit possibility until the verdict is rendered. In the first of these two situations

> the defense of the statute must be raised at the trial or before trial on motion. If

this is not done and a verdict of guilty is rendered, sentence may be lawfully imposed. In other words, we differentiate that situation from our holding in the present case . . . .

*Id.* at 913 (citations omitted). This *Askins* "differentiation" is directly in line with the *Cook* view that the limitation is a defense which must be raised by the defendant.

Wild nevertheless argues that language from a subsequent similar case in this circuit, *Chaifetz v. United States*, 109 U.S. App.D.C. 349, 288 F.2d 133 (1960), *cert. denied*, 366 U.S. 209, 81 S.Ct. 1051, 6 L.Ed.2d 233 (1961), supports his contention that the statute constitutes a jurisdictional bar to prosecution rather than an affirmative defense. In *Chaifetz* the defendant requested the trial court to give the jury a lesser included offense instruction, even though the lesser offense was barred by the statute of limitations. This court ruled that the instruction was properly refused because the defendant could not be convicted of the lesser included offense. However, in so ruling, the court mentioned that "a statute of limitations in a criminal case . . . is not merely a statute of repose but creates a bar to prosecution."[8] *Id.* at 135–36. Wild argues that this language implies that the statute of limitations in criminal cases is jurisdictional. Appellee's Brief at 6. We disagree, for when we view this language in light of *Cook*, it is apparent that such is not the case. The Supreme Court recognized that the statute of limitations in *Cook* was a defense which might eventually bar prosecution, but only if the government could not prove any applicable exception. In this respect only is the statute of limitations a "bar to prosecution."[9]

---

**7.** *Accord, Biddinger v. Commissioner of Police*, 245 U.S. 128, 135, 38 S.Ct. 41, 43, 62 L.Ed. 193 (1917) ("The statute of limitations is a defense and must be asserted on the trial by the defendant in criminal cases . . . .") *United States v. Kenner*, 354 F.2d 780, 785 (2d Cir. 1965), *cert. denied*, 383 U.S. 958, 86 S.Ct. 1223, 16 L.Ed.2d 301 (1966).

**8.** As support for this proposition, the court relied on some dicta from a Sixth Circuit opinion which we find to be unreliable and there-

fore do not follow. *Benes v. United States*, 276 F.2d 99, 108–09 (6th Cir. 1960).

**9.** Wild's misinterpretation of this language in *Chaifetz* seems to be derived from a Tenth Circuit opinion in which that court, citing *Chaifetz*, held that the defendant could raise the statute of limitations for the first time on appeal and thus limit the court's power to punish him. The court thus found ("[n]otwithstanding . . . the differentiation made in *Askins*") that the limitation was jurisdictional. *Waters v. United States*, 328 F.2d 739, 743 (10th Cir.

.Our next task then, having decided that the statute does not constitute a jurisdictional bar, is to determine whether Wild could validly waive his potential defense based on the statute of limitations by a written agreement with the WSPF prior to its expiration. At least one circuit has ruled that the statute of limitations defense can effectively be waived by the defendant, clearing the way for his subsequent prosecution. In that case, *United States v. Parrino*, 212 F.2d 919 (2d Cir.), *cert. denied*, 348 U.S. 840, 75 S.Ct. 46, 99 L.Ed. 663 (1954), the Second Circuit affirmed the district court's sentencing of a defendant who deliberately, and with the advice of counsel, decided to waive the statute of limitations by pleading guilty. *Id.* at 922. Furthermore, the Second Circuit was confronted with a situation closely analogous to the one at hand in *United States v. Doyle*, 348 F.2d 715 (2d Cir.), *cert. denied*, 382 U.S. 843, 86 S.Ct. 89, 15 L.Ed.2d 84 (1965). There the government obtained an indictment against Doyle and others on July 2, 1962, and requested that it be immediately impounded so as not to prevent the return to the United States of two of the defendants. In August of 1962, Doyle's attorney contacted the Department of Justice attorneys in charge of the case and requested that they conduct an investigation into a purported immunity agreement between Doyle and the Securities and Exchange Commission. That investigation apparently revealed that no such immunity had been granted because in April of 1963 the Justice Department decided to go forward with its prosecution of Doyle and so advised his attorneys. During the course of the subsequent plea bargaining, Doyle requested that the indictment remain sealed. The indictment was finally unsealed on August 6, 1963, after the applicable five year statute of limitations had run.

Just as Wild engaged in negotiations with the WSPF in the hope of eventually avoiding prosecution, so did Doyle. His attorney candidly admitted that "by present-

ing the Department with evidence of a commitment [of immunity] I hoped they would hold up whatever it was they were doing, that is, if they were still considering prosecution that they give up the idea . . ." *Id.* at 717. Doyle originally entered a plea of not guilty to all counts but, after further plea bargaining, withdrew it and entered a plea of guilty to one count, whereupon the government moved to dismiss the remaining counts. Doyle appealed from his sentence on this one count, arguing that the indictment was unsealed after the statute of limitations had run, and therefore, the district court judgment had to be reversed.

Judge Friendly, in an opinion affirming the district court's decision, wrote that an unqualified plea of guilty "bars further consideration of all but the most fundamental premises for the conviction, of which the subject-matter jurisdiction of the court is the familiar example." *Id.* at 718–19. He went on to say that under *Cook* and *Parrino*, Doyle's statute of limitations and speedy trial claims did not rise to this level. Perhaps most important in terms of the issue confronting us, Judge Friendly noted:

> Even if such claims are not waived by pleas of guilty *simpliciter*, a defendant advised by counsel can agree so to waive them, and the circumstances compel the conclusion that Doyle did precisely that.

*Id.* The court therefore found that an implicit agreement was sufficient to waive the statute of limitations.

We agree with the Second Circuit's interpretation of *Cook* and *Parrino*, and therefore find that Wild could effectively waive his statute of limitations defense. The case for such a decision is even stronger here than it was in *Doyle*. In the case at bar, Wild's attorney negotiated for the express written waiver, obviously intending that his client would derive some benefit from it. Wild executed such waiver knowingly and wilfully after full consultation with his attorney.

The policy behind the statute of limitations is not violated by our holding that

1964). We believe the *Askins* differentiation to be in line with the Supreme Court's holding in

*Cook* and thus choose not to adopt the *Waters* rationale.

Wild could waive this defense. As the Supreme Court explained in *Toussie v. United States*, 397 U.S. 112, 114–15, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970):

> The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions. Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past. Such a time limit may also have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity.

The law enforcement officials here, the WSPF, needed no such encouragement. They were prepared to seek an indictment before the statute ran, and it was only after the intercession by defendant's attorney that they agreed to wait. Furthermore, the consideration supporting this policy of limitation, that the defendant is "handicap[ped] in ascertaining the truth after the lapse of years from the events in question," *Askins, supra* at 912, is totally inapplicable to the present case. The delay from September 1975 to March 1976, when Wild was finally indicted, is substantially attributable to the defendant's attempts to obtain a beneficial disposition of his case by means of plea bargaining. The defendant thus may not complain that the government has chosen to prosecute a "stale claim"; if it indeed is stale, only he is responsible. We consider it of prime importance to our decision here that Wild was the one who sought to waive

this defense; it was not the government attorneys who sought the extra time in which to make their case.

■ We find further support for our decision to allow the waiver in this instance in the Federal Rules of Criminal Procedure. Although Fed.R.Crim.P. 12(b) does not explicitly state when the defense of the statute of limitations must be raised, we note that at least two commentators are in agreement that the sensible rule is that it is waived if not raised at or before trial.[10] Such agreement perhaps results from the Advisory Committee Note to Rule 12 which states that the limitation defense does not *have to be* raised *prior* to trial, the inference being that the pleader has the option of raising it either in a pretrial motion or by a motion during the trial.[11] As one writer has persuasively reasoned:

> Rule 12 is silent as to when nonwaivable defenses [those which are not waived by failure to raise by pretrial motion], other than lack of jurisdiction and failure to charge an offense, *must* be raised. Since the Rule expressly permits the latter two defenses to be raised at any time during the pendency of the proceeding, it may by negative implication be interpreted as foreclosing the other defenses if not raised during the trial itself. It seems clear at least that the defense of the statute of limitations should be raised no later than the trial . . . .[12]

It seems to us, too, that if a defendant may waive certain constitutional rights, he should certainly be capable in this instance of waiving a statutory right such as the statute of limitations. Constitutional rights which the defendant may waive include, *inter alia*, the right to be represented by

---

**10.** 1 C. Wright, Federal Practice and Procedure § 193, at 409–10 (2d ed. 1969); 8 Moore's Federal Practice ¶ 12.03[1], at 12–17, –18 (2d ed. 1976) (hereinafter cited as Moore's).

**11.** The pertinent paragraph of the Advisory Committee Note reads:

> In the other group of objections and defenses, which the defendant at his option may raise by motion before trial, are included all defenses and objections which are capable of determination without a trial of the gener-

al issue. They include such matters as former jeopardy, former conviction, former acquittal, *statute of limitations*, immunity, lack of jurisdiction, failure of indictment or information to state an offense, etc. Such matters have been heretofore raised by demurrers, special pleas in bar and motions to quash.

Moore's, *supra* at 12–6 (emphasis added).

**12.** *Id.* at 12–17, –18 (citations omitted).

counsel,[13] the right not to be twice put in jeopardy,[14] and the right to be tried in the district where the offense was committed.[15] If the strong policies behind these rights are not violated by a rule permitting them to be waived by a defendant, we cannot find that the limitation statute's policy is violated here where the defendant was fully cognizant of the consequences of such a waiver and decided to execute it on the advice of his attorney for his own benefit.

 Finally, the defendant contends that if he could legally waive his statute of limitations defense, the particular waiver which he signed was void as against public policy because it contained no time restriction on how long the government could wait before seeking his indictment. In the abstract, this argument may be appealing, but we find it unavailing in the context here. The statute of limitations is tolled, for example, for as long as a defendant is a fugitive from a particular jurisdiction.[16] Wild did not flee, but instead sought to promote his own best interests by remaining and engaging in plea bargaining. In either case, it is the defendant who in effect controls the timing of his prosecution; in the former, prosecution would commence upon the fugitive's return to the jurisdiction, and in the latter, it commenced after Wild's unsuccessful attempt to dispose of the case through plea bargaining. Thus, even though there was no express time limit on his waiver, Wild was prosecuted within a reasonable length of time and has shown no prejudice resulting from the delay of approximately six months. Just as "the statute of limitations does not run in favor of fugitives from justice," [17] neither does it run in favor of the defendant here who, by his own initiative, persuaded the govern-

ment to agree to a waiver while he pursued the possibility of plea arrangement.

## III. CONCLUSION

For the foregoing reasons, we find that the defendant Wild validly waived the statute of limitations defense for his own benefit, after consultation with competent counsel and with a full appreciation of the waiver agreement's legal significance. We therefore reverse and remand this case to the district court for further proceedings not inconsistent with this opinion.

*So ordered.*

13. *United States v. Calabro*, 467 F.2d 973, 985 (2d Cir. 1972), *cert. denied*, 410 U.S. 926, 93 S.Ct. 1358, 35 L.Ed.2d 587 (1973); U.S.Const. amend. VI.

14. *United States v. Scott*, 150 U.S.App.D.C. 323, 464 F.2d 832, 833 (1972); U.S.Const. amend. V.

15. *Jones v. Gasch*, 131 U.S.App.D.C. 254, 404 F.2d 1231, 1235 (1967), *cert. denied*, 390 U.S. 1029, 88 S.Ct. 1414, 20 L.Ed.2d 286 (1968); U.S.Const. amend. VI.

16. Title 18 U.S.C. § 3290 (1970) which applies as an exception to all federal statutes of limitations provides:
    No statute of limitations shall extend to any person fleeing from justice.

17. *United States ex rel. Demarois v. Farrell*, 87 F.2d 957, 960 (8th Cir.), *cert. denied*, 302 U.S. 683, 58 S.Ct. 31, 82 L.Ed. 527 (1937).