UNITED STATES of America, Appellee,

v.

Stephen Jerome WILLIAMS, Appellant.

No. 81–5151.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 7, 1982.

Decided July 21, 1982.

* Henry W. Jones, Jr., Raleigh, N. C., for appellant.

James L. Blackburn, Former U. S. Atty., Raleigh, N. C. (Samuel T. Currin, U. S. Atty., Wallace W. Dixon, Asst. U. S. Atty., Edmond W. Caldwell, Jr., Third Year Law Student, Raleigh, N. C., on brief), for appellee.

Before WIDENER, HALL and CHAPMAN, Circuit Judges.

CHAPMAN, Circuit Judge.

Defendant Stephen Jerome Williams appeals his conviction by a jury of the crime of second degree murder. He was indicted for murder in the first degree under 18 U.S.C. § 1111(a), which is an offense punishable by death, 18 U.S.C. § 1111(b).

Williams was sentenced to 30 years imprisonment. He is currently serving a 45 year sentence for an unrelated state-imposed criminal conviction.

Defendant Williams originally sought reversal on three grounds: (a) that there was not sufficient credible evidence to support conviction; (b) that defendant was denied due process by prosecutorial delay; and (c)

* Counsel on appeal only.

that the trial court erred in allowing the government to expand cross examination of the defendant to include prior acts of misconduct relating to one Julia Boo.

After reviewing the briefs and joint appendix, this court advised the attorneys prior to argument to be prepared to address the problem presented by the five year statute of limitations[1] for noncapital offenses and the interpretation of this statute found in *Askins v. United States*, 251 F.2d 909 (D.C.Cir.1958).

We find no merit to the first three exceptions, and also find that *Askins* can be distinguished and does not control the present case. Therefore, we affirm.

## I

On February 16, 1975, a young female soldier, Kathleen Dandois, was residing in a mobile home in Fairlane Acres Trailer Park, Fayetteville, North Carolina, near the Fort Bragg military reservation. At approximately 11:00 p. m. on that date she left her trailer to walk to a nearby convenience store to purchase some cigarettes and other items. She never returned to her mobile home and her partially decomposed body was discovered in a secluded area on the military reservation on February 19, 1975. Examination of the body showed that she had been stabbed some 29 times and apparently had been sexually assaulted.

The Criminal Investigation Detachment (CID) immediately began investigation, but in spite of its efforts and the efforts of the Federal Bureau of Investigation (FBI), the murder remained a mystery until March 1978 when a "born again" religious conversion resulted in a confession by William Joseph Facey. In his initial statement to the FBI, Facey stated that he and a friend (he did not identify the friend in the first statement) had been riding in a white Vega automobile and were going to his friend's trailer in Fairlane Acres Trailer Park. When they passed the convenience store they noticed a white female coming out and, after talking with her for a few moments, his friend grabbed the female and put her in the back seat of the car. They drove to an isolated area on the Fort Bragg military reservation and his friend[2] took Kathleen Dandois out of the car and raped her. Facey then raped Dandois and stabbed her repeatedly. Facey then advised defendant Williams that he (Facey) had felt the woman's pulse, and finding none, thought she was dead. Williams then drove the Vega automobile over her body to insure that she was dead. Facey picked up the body and carried it further into the woods. Her clothes were gathered and thrown away along with the knife.

Facey later identified a photograph of the deceased woman as the person sexually assaulted and killed by himself and Williams. In a later interview in April 1978 he identified Stephen Jerome Williams as the man who had been with him on the night of February 16, 1975 and had raped and assisted in the murder of Kathleen Dandois.

Shortly after this second statement by Facey, the FBI interviewed Williams and he then denied and has subsequently denied any connection with the rape or murder. There were additional interviews with Williams in June and September of 1980. The indictment was returned February 2, 1981 charging Facey and Williams with first degree murder, and aiding and abetting one another in violation of 18 U.S.C. §§ 1111 and 2. The trial was conducted in May 1981 and resulted in a verdict of guilty as to defendant Williams of the lesser included offense of second degree murder. Facey had entered a guilty plea prior to trial and testified for the prosecution.

---

1. The statute of limitation is found in 18 U.S.C. § 3282 which provides:

   Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.

Title 18 U.S.C. § 3281 provides:

An indictment for any offense punishable by death may be found at any time without limitation except for offenses barred by the provisions of law existing on August 4, 1939.

2. Later identified by Facey as defendant Stephen Jerome Williams.

Defendant's attorney submitted to the court a request to charge on the lesser included offense of murder in the second degree. The court gave the charge and this is the crime of which defendant was convicted. At the time this charge was requested defense counsel did not mention the limitation found in 18 U.S.C. § 3282 or that a guilty verdict on the lesser included offense might be time barred.

## II

■ The statute of limitations set forth in 18 U.S.C. § 3282 is not jurisdictional. It is an affirmative defense that may be waived. *United States v. Wild*, 551 F.2d 418 (D.C.Cir.1977) *cert. denied* 431 U.S. 916, 97 S.Ct. 2178, 53 L.Ed.2d 226 (1977); *United States v. Akmakjian*, 647 F.2d 12 (9th Cir.), *cert. denied*, 454 U.S. 964, 102 S.Ct. 505, 70 L.Ed.2d 380 (1981); *United States v. Doyle*, 348 F.2d 715 (2nd Cir.), *cert. denied* 382 U.S. 843, 86 S.Ct. 89, 15 L.Ed.2d 84 (1965); *United States v. Waldin*, 253 F.2d 551, 558 (3rd Cir.), *cert. denied* 356 U.S. 973, 78 S.Ct. 1136, 2 L.Ed.2d 1147 (1958); *United States v. Franklin*, 188 F.2d 182 (7th Cir. 1955); *Capone v. Aderhold*, 65 F.2d 130 (5th Cir. 1933); *United States v. Levine*, 658 F.2d 113 (3rd Cir. 1981).

*Askins v. United States, supra,* is also from the D. C. Circuit and held that a defendant charged with first degree murder but convicted of second degree murder may not be lawfully sentenced more than three years [3] after the offense because of the time constraints of § 3282. Askins was indicted for first degree murder in 1939 and was found by a jury to be of unsound mind. He was committed to a hospital and the indictment was nol-prossed. In 1954 he was released from the hospital and reindicted for the same crime. The jury convicted him of second degree murder. On the original appeal, 231 F.2d 741 (D.C.Cir.1956), the issue of the statute of limitations was not raised. However, this question was presented by a § 2255 petition the following year. This petition was denied by the district court but granted by the Court of Appeals, 251 F.2d 909 (D.C.Cir.1958).

In neither *Askins I* nor *Askins II* is the question of waiver of the statute of limitations addressed. An examination of *Askins I* reveals that it was the United States that asked for the instruction on the lesser included offense. Askins was indicted on the charge of first degree murder.[4] His defense was insanity. The decision reflects at page 741:

> After the jury had been fully instructed on all elements of the case, a bench colloquy occurred. The government then requested that the jury be instructed as to the elements of murder in the second degree. With much misgiving, as the transcript discloses, the trial judge decided "out of an abundance of caution" to grant the government's request.

Obviously there could be no claim of waiver by Askins because it appears he was content with his insanity defense. It was the government that did not wish to run the risk of an all or nothing verdict on the charge of first degree murder.

■ In the present case Williams received the charge he requested, and he was convicted of the lesser included offense contained therein. Murder in the first degree is a capital offense for which there is no statute of limitations. If the court had not given the requested lesser included offense charge, Williams would have been in the unenviable position of facing a verdict of guilty or not guilty on a capital offense. The requested charge was certainly in Williams' best interest under the circumstances. He requested the charge, did not object to the charge, was convicted under the charge and, in all probability, benefited from the charge. He cannot now complain of the result and his actions obviously constitute a waiver of the time limitation con-

---

**3.** At the time of *Askins* the limitation was only three years rather than the present five years.

**4.** He was charged with poisoning a prostitute by serving her whiskey laced with potassium cyanide. He planned to "kill all the prostitutes in town if possible." This would be quite an undertaking in the District of Columbia.

tained in § 3282. In *Wild* the defendant signed a statement waiving the statute of limitations in an effort to prevent being indicted during the completion of the plea negotiations with the government. When these negotiations broke down, defendant was indicted, but the statute had run. The district court found the statute to be a bar, but the Court of Appeals concluded that the statute of limitations was not a jurisdictional bar to prosecution but was a waivable defense and the actions of the defendant had waived the statute.

Although there is a split of authority among the circuits on the issue of whether the statute of limitations is jurisdictional or whether it is an affirmative defense that may be waived, the Sixth Circuit and the Tenth Circuit are the only two which have concluded that the statute of limitations is a jurisdictional bar which may be raised at any time by a criminal defendant. *Benes v. United States*, 276 F.2d 99 (6th Cir. 1960) and *Waters v. United States*, 328 F.2d 739 (10th Cir. 1964). For decisions of the Second, Third, Fourth, Fifth, Seventh, Ninth and D. C. Circuits see page five hereof.

In *Vance v. Hedrick*, 659 F.2d 447 (4th Cir. 1981), Judge Haynsworth wrote:

> Most federal courts that have considered the question have held that time bars to the prosecution or trial of criminal cases, as of civil cases, are affirmative defenses which may be waived. Page 452.

In *Biddinger v. Commissioner of Police*, 245 U.S. 128, 38 S.Ct. 41, 62 L.Ed. 193 (1917), the Court held that "[t]he statute of limitations is a defense and must be asserted on the trial by the defendant in criminal cases." There the court would not allow Biddinger to raise the defense of the statute of limitations in a habeas corpus petition where he sought to prevent extradition to stand trial on the claim he contended was time barred.

Both Professors Wright and Moore agree that the statute of limitations may be waived, with Wright noting that "the sensible resolution is that the matters now being considered [statute of limitations and oth-

ers] are waived if not raised at the trial." 1 Wright, *Fed'l Prac. & Proc.* § 193 at 410; and Moore commenting that "[i]t seems clear at least that the defense of the statute of limitations should be raised no later than the trial . . . ." 8 Moore's *Fed'l Prac.* ¶ 12.-03[1] at 12–17 and 18.

## III

Defendant claims that there was insufficient *credible* evidence to support a conviction. This is nothing more than an attack upon the credibility of Facey, who had confessed his participation in the crime and whose confession implicated Williams as an accomplice. The primary contention is that Facey's in-court testimony contradicted his prior written confession and there were inconsistencies within his prior sworn statements.

Viewed in the light most favorable to the prosecution, there is substantial evidence to support the jury's verdict. The jury, under proper instructions from the court, has the responsibility for deciding questions of credibility. A review of the judge's charge reflects that the jury was given proper instructions on the issue of credibility. These instructions correctly stated the law as to the credibility of accomplices and that such testimony must be received with caution and weighed with great care. The judge also charged that the defendant should never be convicted upon the unsupported testimony of an accomplice unless the jury believes such testimony beyond a reasonable doubt. The jury was warned that the guilty plea of the accomplice is not evidence of the guilt of any other person.

## IV

The defendant claims error because the trial court allowed the prosecution to ask him if he was involved in a sexual assault upon one Julia Boo, the wife of a Fort Bragg soldier, in the spring of 1975 near the time of the murder in question. The judge sustained an objection to the question of whether Williams had been indicted for this

offense, but did allow a question of whether he committed an assault upon Julia Boo. The defendant now contends that the question was improper because it was asked for the purpose of impeaching him and therefore was not admissible under Federal Rule of Evidence 608(b). However, it is obvious from the remarks of the trial judge at the time of the question that it was admitted as a similar act under Rule 404(b), and as such, was left to the sound discretion of the trial court, which in this case was not abused.

### V

Appellant for the first time claims violation of due process because of prosecutorial delay. The murder was committed February 19, 1975, and the indictment was not returned until February 2, 1981. This issue was not raised at the trial nor in any of the pretrial motions. Ordinarily, we would not consider it. *McGowan v. Gillenwater*, 429 F.2d 586 (4th Cir. 1970). However, this rule is not inflexible, and the court may consider grounds not presented to the district court. *U. S. v. Anderson*, 481 F.2d 685, 694, 695 (4th Cir. 1973). By answering the question now, we may avoid this issue in a § 2255 proceeding.

The record reflects that the Dandois murder was extensively investigated from the beginning, but there was not a significant break in the case until Facey's initial confession in March 1978. At that time Facey did not name his accomplice, but Williams was named in the statement of April 1978. Interviews with Williams at that time were unproductive and remained so. The FBI continued its investigation and finally located the Vega automobile in Italy. The photographs were made of the automobile and presented to Facey for identification. This was part of the evidence used at trial. When this evidence became available in June 1980 a new special agent was assigned to the case. Following interviews with Facey, this agent secured Facey's agreement to testify about the offense. Until Facey agreed to take the stand, the government had little chance of either indicting or convicting Williams. Following this June 24,

1980 interview with Facey, the agent had additional interviews with Williams in June and September 1980 with the indictment resulting February 2, 1981.

Although appellant has raised no Sixth Amendment claim of failure to provide a speedy trial, it is proper to note that from the time Williams first became a suspect in April 1978 until the present day he has been in state custody following a conviction of an unrelated crime. Therefore, any delay did not interfere with his liberty, disrupt his employment, curtail his associations or drain his financial resources.

In *U. S. v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977) the court found it could not establish firm time restrictions to cover prosecutorial delay. It defined the many reasons why the court should not attempt to direct a prosecutor as to when seek an indictment, and held that proof of prejudice to a defendant because of delay in indictment did not mean that the claim was "automatically valid" but only that the claim was "ripe for adjudication." At page 790, 97 S.Ct. at page 2048–2049 it is stated:

> But the Due Process Clause does not permit courts to abort criminal prosecutions simply because they disagree with the prosecutor's judgment as to when to seek an indictment. Judges are not free, in defining "due process", to impose on law enforcement officials" our personal and private notions" of fairness and to "disregard the limits that bind judges in their judicial function." *Rochin v. California*, 342 U.S. 165, 170 [72 S.Ct. 205, 208, 96 L.Ed. 183] (1952). Our task is more circumscribed. We are to determine only whether the action complained of—here compelling respondent to stand trial after the Government delayed indictment to investigate further—violates those "fundamental conceptions of justice which lie at the base of our civil and political institutions," *Mooney v. Holohan*, 294 U.S. 103, 112 [55 S.Ct. 340, 341, 79 L.Ed. 791] (1935), and which defines "the community's sense of fair play and decency". *Rochin v. California, supra*, at 173 [72 S.Ct. at 210].

From *Lovasco* we learn that preindictment delay to allow the government to complete its investigation is not violative of due process unless it violates fundamental concepts of justice, fair play and decency. In the present case the defendant has shown no actual prejudice because of the delay and in view of the three years that passed before the first break in the case and the continuing investigation by the FBI there is no showing of a violation of due process.

JUDGMENT AFFIRMED.

K. K. HALL, Circuit Judge, dissenting:

It is with no small amount of reluctance that I dissent in this case. A more grisly crime is hardly conceivable, even to those of us who endure a daily parade of heinous facts. Nonetheless, Congress has enacted a statute which precludes punishment for non-capital offenses if the defendant is not indicted within five years of the crime. 18 U.S.C. § 3282. Even though this statute allows a murderer to go unpunished unless the government can prove that the circumstances of the crime constitute first degree murder, the remedy is in the hands of Congress, not the courts. Accordingly, I dissent.

## I.

Williams was indicted for the capital offense of first degree murder nearly six years after the crime, but was convicted and sentenced for the non-capital offense of second degree murder. Although there is no statute of limitations on capital offenses, 18 U.S.C. § 3282 provides:

> Except as otherwise expressly provided by law, no person shall be prosecuted, tried or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.

Thus, as the D. C. Circuit held in *Askins v. United States*, 251 F.2d 909 (D.C.Cir.1958), "A sentence imposed for second degree murder upon an indictment timely for first degree murder, but found more than [five] degree murder, but found more than [five] years after the offense, is a sentence which is not authorized by law." *Id.* at 912. In my view, *Askins* is a precise statement of the law, compelled by the plain language of the statute, and we should follow its lead.

## II.

The majority contends first that the statute is a non-jurisdictional, and therefore, waivable provision, and, secondly, that Williams effectively waived the defense by asking for an instruction on second degree murder. Those conclusions are supported neither by the law nor the facts of this case.

### A.

The majority attempts to discount *Askins*, citing a number of cases, including a more recent case out of the D. C. Circuit, *United States v. Wild*, 551 F.2d 418 (D.C. Cir.1977), which hold that a defendant may waive the statute of limitations on an indictment. On the contrary, *Askins* is indistinguishable from this case and the majority's discussion misses the mark.

The distinction between this case and those cited by the majority was elucidated by the D. C. Circuit in *Askins* and *Wild*. In *Askins*, the D. C. court faced the identical situation we have in this case: there was no statute of limitations on the crime charged in the indictment; rather the problem arose because the defendant was convicted of a lesser included offense, even though prosecution for that offense was time-barred. Under those circumstances, that court held that the statute of limitations was a bar to conviction for the lesser included offense. However, the court recognized a potential distinction, saying,

> The case would be different, however, were a statute of limitations applicable to the indictment itself. In that event, the defense of the statute must be raised at the trial or before trial on motion.

251 F.2d at 913. When that hypothetical was presented as the case in *Wild*, the D. C. court expressly distinguished *Askins*, reiterating that the result would be different if, as in *Askins*, the statute of limitations were

applicable only to a "lesser included offense that remains only an implicit possibility until the verdict is rendered." 551 F.2d at 422.

That distinction is telling here. Unlike *Wild* and the other cases cited in the majority opinion, in this case, the statute of limitations was not applicable to the crime charged in the indictment. As in *Askins*, the defendant could only be indicted for first degree murder, and therefore the statute dictates that he cannot be convicted of second degree murder as a lesser included offense.

### B.

The majority also holds that Williams waived the statute of limitations by asking for an instruction on second degree murder. Again, this conclusion is indefensible. *Askins* is exactly on point; *Wild* and the other cases cited concern situations of explicit voluntary waiver of a statute of limitations defense to a charge in the indictment.[1]

In *Wild*, for example, the government was ready to proceed with an indictment which would have been filed just before the statute of limitations ran on the charges. The defendant's attorney advised his client to waive the statute of limitations to give more time to plea bargain and Wild signed a written waiver. Under those particular circumstances, the D. C. Circuit found that the defendant had expressly waived the statute of limitations.

In this case, on the other hand, there was no indication that by asking for a second degree murder instruction, Williams knowingly waived the statute of limitations. As the court noted in *Askins*, we cannot imply waiver merely because the defendant sought an alternative verdict of second degree murder; the court could still "impose no sentence not authorized by the law applicable to the verdict which was rendered." 251 F.2d at 912. Moreover, it is obvious from the proceedings in this case that none of the parties even knew of the statute of limitations until the eve of oral argument when this Court brought the statute and the *Askins* case to counsel's attention. Under these circumstances, it defies all reason to surmise that Williams knowingly waived this defense.

### III.

In sum, since more than five years had elapsed after the crime before an indictment issued in this case, and the defendant made no waiver of the statute of limitations for non-capital offenses, § 3282 bars trial and punishment for this crime. By holding otherwise, the majority opinion usurps the legislative power constitutionally vested in Congress.

---

1. Briefly, the cases cited by the majority are distinguishable from this case as follows: *United States v. Akmakjian*, 647 F.2d 12 (9th Cir.) *cert. denied*, 454 U.S. 964, 102 S.Ct. 505, 70 L.Ed.2d 380 (1981) (defendant expressly waived statute of limitations defense when he entered guilty plea); *United States v. Levine*, 658 F.2d 113 (3d Cir. 1981) (defendant executed written waiver of statute of limitations); *United States v. Doyle*, 348 F.2d 715 (2d Cir.) *cert. denied* 382 U.S. 843, 86 S.Ct. 89, 15 L.Ed.2d 84 (1965) (defendant's guilty plea constituted waiver of defense of statute of limitations; or, alternatively, facts of case led to conclusion that defendant had expressly waived defense); *Capone v. Aderhold*, 65 F.2d 130 (5th Cir. 1933) (defendant claimed he was not indicted within three years of the commission of the offenses with which he was charged). In two of the cases cited by the majority, *United States v. Waldin*, 253 F.2d 551, 558 (3d Cir.) *cert. denied* 356 U.S. 973, 78 S.Ct. 1136, 2 L.Ed.2d 1147 (1958) and *United States v. Franklin*, 188 F.2d 182 (7th Cir. 1955), the defendant did not prevail primarily because his statute of limitations defense had no merit. Thus, those two cases are not even minimally persuasive.