**UNITED STATES of America,
Plaintiff-Appellee,
v.**

**Jerry MEEKER, Defendant-Appellant.**

**No. 82–2086.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 18, 1983.

Decided March 3, 1983.

Rehearing and Rehearing En Banc
Denied April 13, 1983.

Kenneth E. North, Solomon, Rosenfeld, Elliott, Stiefel & Abrams, Ltd., Chicago, Ill., for defendant-appellant.

Breckinridge L. Willcox, Fraud Section, Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before BAUER, WOOD and POSNER, Circuit Judges.

BAUER, Circuit Judge.

Defendant Meeker was convicted of thirty-six counts of conspiracy to defraud the government, making false statements, and mail fraud. He was sentenced to concurrent terms of three years imprisonment on each count. On appeal the defendant asserts, among other claims, that the district court improperly refused to dismiss the indictment against him. The defendant claims that several counts were barred by the relevant statute of limitations and that another count was legally insufficient. We affirm.

I

A

At the time he was indicted, the defendant worked as manager of the student

account center at Bell & Howell Schools, a subsidiary of Bell & Howell Company. The student account center serviced guaranteed loans under the Federal Insured Student Loan Program, 20 U.S.C. §§ 1071 to 1087–4 (1965), for students enrolled in the Bell & Howell vocational school system.

Under the federally insured loan program, Bell & Howell was required to make reasonable collection efforts when a student failed to make loan payments. 20 U.S.C. §§ 1078(a)(4), 1080. The collection schedule included a specific 120-day cycle of telephone calls and collection letters to the defaulting borrower. A default claim submitted by Bell & Howell Schools to the Department of Health, Education and Welfare (HEW) had to contain a record of due diligence detailing the collection efforts.

In 1975, Bell & Howell Schools' delinquent accounts receivable numbered in the thousands, representing millions of dollars. If Bell & Howell Schools could not collect these loans from the students, each account would have to be processed through the 120-day due diligence cycle before it could be submitted to HEW for payment. The cash flow problems and potential losses presented by the old accounts caused concern to Bell & Howell management.

The scheme developed by the defendant in late 1975 involved falsifying "due diligence" cards for submission to HEW. The defendant recruited a group of trusted employees to create the mendacious cards reflecting collection history. The employees forged dated entries detailing telephone calls that were never made and letters that

were never sent. Additionally, the workers used different colored pens, exchanged cards so that each card would contain different handwritings, and applied coffee and cigarette ashes to make the cards appear old.

The falsified due diligence cards were the bases for the false statement charges in the indictment. The Treasury checks mailed to Bell & Howell Schools in response to the default claims were the bases for the mail fraud charges.

## B

A federal grand jury heard evidence regarding the investigation of Bell & Howell beginning in March 1981. Because the allegedly fraudulent activity occurred in 1975 and early 1976, the government was faced with losing potential criminal charges under the applicable five-year statute of limitations. 18 U.S.C. § 3282 (1961).[1]

To alleviate the immediate time pressures, the government executed short-term waivers of the statute of limitations with all targets of its investigation. The waivers were attractive to Bell & Howell, the defendant, and the other targets because the government needed time to review a large package of documents furnished by Bell & Howell which might have exonerated some of the targets, including the defendant. Each target separately executed a government-drafted limitations waiver in late July 1981. The waiver covered the period August 17, 1976, through September 23, 1976.[2]

1. The statute of limitations in 18 U.S.C. § 3282 (1961) provides:

 Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.

2. The waiver signed by the defendant and sent to the Department of Justice on July 30, 1981, stated in part:

 I have been advised by my attorney, Kenneth E. North, that should all target defendants concur, a final decision with respect to seeking criminal indictments in this matter will be delayed based upon an agreed tolling

of the applicable statute of limitations. Therefore, I hereby waive a defense founded upon the statute of limitations for any offenses in connection with Bell & Howell FISL claims which allegedly occurred between August 17, 1976 through and including September 23, 1976. It is understood that this waiver does not preclude the Government from seeking an indictment prior to September 23, 1981. It is further understood that this waiver in no way bars or limits any defenses of any kind based upon due process grounds and associated with delay in bringing the indictment. It is further understood and agreed that the only offenses for which the statute of limitations waiver is applicable is [sic] those allegedly occurring between Au-

Two months later, government attorneys realized that they could not complete their investigation in time to present evidence to the next grand jury session scheduled for September 21–22, 1981. Therefore, on September 14 the government sought from all parties an additional, one-month waiver of the statute of limitations. All parties agreed immediately except the defendant, who insisted on drafting his own version of the waiver. The government and the defendant did not agree to the terms of that draft until September 18, and the government did not receive a copy of the defendant's waiver until September 21, the same day that the grand jury began its September session.

The defendant and a co-defendant were indicted on October 21, 1981. The co-defendant was acquitted of all charges.

## II

In deciding that the issue whether a defendant was unjustly imprisoned because the state indictment was returned after the statute of limitations expired was not a proper basis for *habeas corpus* relief, the Supreme Court in 1917 stated, "The statute of limitations is a defense and must be asserted on the trial by the defendant in criminal cases . . . ." *Biddinger v. Commissioner of Police,* 245 U.S. 128, 135, 38 S.Ct. 41, 43, 62 L.Ed. 193 (1917). The Court relied on *United States v. Cook,* 84 U.S. (17 Wall.) 168, 178–79, 21 L.Ed. 538 (1872), to support its holding.

This long-standing precedent formed the basis of the District of Columbia Circuit's ruling in *United States v. Wild,* 551 F.2d 418 (D.C.Cir.), *cert. denied,* 431 U.S. 916, 97 S.Ct. 2178, 53 L.Ed.2d 226 (1977), that criminal statutes of limitations do not create jurisdictional bars to prosecution. The *Wild* court considered whether the limitations period pertaining to illegal campaign contributions, 2 U.S.C. § 455(a) (Supp. V

1975), was a jurisdictional bar. The court reasoned that because the limitations defense must be raised affirmatively at trial, it could be waived. The court further noted that if a defendant may waive such constitutional rights as the right to be represented by counsel and the right to not be put twice in jeopardy, he also must be able to waive rights under statutes of limitations. *Id.* at 424–25.

Other courts have adopted this view. *See, e.g., Vance v. Hedrick,* 659 F.2d 447 (4th Cir.1981), *cert. denied,* 456 U.S. 978, 102 S.Ct. 2246, 72 L.Ed.2d 854 (1982); *United States v. Levine,* 658 F.2d 113 (3d Cir. 1981); *United States v. Akmakjian,* 647 F.2d 12 (9th Cir.1981), *cert. denied,* 454 U.S. 964, 102 S.Ct. 505, 70 L.Ed.2d 380 (1982); *United States v. Doyle,* 348 F.2d 715 (2d Cir.), *cert. denied,* 382 U.S. 843, 86 S.Ct. 89, 15 L.Ed.2d 84 (1965); *United States v. Sindona,* 473 F.Supp. 764 (S.D.N.Y.1979); *but see United States v. Hankin,* 607 F.2d 611 (3d Cir.1979) (this case not discussed in *Levine, supra* ); *Waters v. United States,* 328 F.2d 739 (10th Cir.1964). In addition, two noted authorities on federal procedure agree that such a statute of limitations may be waived. 8 J. MOORE, MOORE'S FEDERAL PRACTICE ¶ 12.03[1], at 12–17, 18 (2d ed. 1976); 1 C. WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 193, at 409–10 (2d ed. 1969).

The defendant nevertheless urges that this statute of limitations, 18 U.S.C. § 3282 (1961), poses a jurisdictional bar to prosecution. We disagree. More than 100 years ago the Supreme Court suggested that a defendant in a criminal action must affirmatively assert the limitations defense. A great majority of today's courts have adopted that position; we believe it to be correct.

This circuit has not yet ruled directly on the issue. However, the defendant notes that this court once wrote: "A plea of the

gust 17, 1976 and September 23, 1976, and in no way extends or tolls the statute of limitations for any other or subsequent alleged offenses.

I have discussed this matter with my attorney and fully understand the consequences of

this waiver. No promises, representations or inducements of any kind other than those contained herein have been made to me or my counsel in connection with this waiver.

statute of limitations is a plea in bar and should be presented to and passed upon by the trial court." *United States v. Franklin,* 188 F.2d 182, 186 (7th Cir.1955). That statement is not inconsistent with the position we embrace here. The *Franklin* court acted in response to the government's contention that the defendant was raising his limitations defense for the first time on appeal and that, therefore, the court should not consider that defense. The court agreed. A "plea in bar" is not a jurisdictional bar, but rather an affirmative defense that absolutely defeats a plaintiff's claim.

Two lines of authority fortify this interpretation of *Franklin.* First, in support of its holding the *Franklin* court cited *United States v. Kaiser,* 138 F.2d 219 (7th Cir.1943), *cert. denied,* 320 U.S. 801, 64 S.Ct. 431, 88 L.Ed. 483 (1944), where the court held "that an appellate court will review only questions brought to the attention of the trial court and upon which the trial court has made a ruling." *Id.* at 220. This is not the standard applicable to jurisdictional issues. Second, several courts have cited *Franklin* for the antithesis of the defendant's position. Those courts held that time bars are in fact defenses at trial and not jurisdictional. *United States v. Williams,* 684 F.2d 296, 299 (4th Cir.1982); *United States v. Waldin,* 253 F.2d 551, 558 (3d Cir.), *cert. denied,* 356 U.S. 973, 78 S.Ct. 1136, 2 L.Ed.2d 1147 (1958) (*per curiam* opinion denying petition for rehearing); *Askins v. United States,* 251 F.2d 909, 913 (D.C.Cir. 1958).

It appears that only the Sixth and Tenth Circuits currently retain the view that the statute of limitations is a jurisdictional bar in criminal actions. The Sixth Circuit's position was stated thirteen years ago in dictum. *Benes v. United States,* 276 F.2d 99, 108–09 (6th Cir.1960). The Tenth Circuit relied on *Benes* in formulating its position in 1964. *Waters v. United States,* 328 F.2d 739, 742–43 (10th Cir.1964). The District of Columbia Circuit rejected *Benes* as unreliable in its thorough analysis of the issue in *Wild,* 551 F.2d at 422 n. 8. We agree with the D.C. Circuit; the *Williams-Wild* line of cases enunciates the sounder view.

■ Our holding is consonant with the Supreme Court's view of the purpose underlying statutes of limitations governing criminal laws. The Court in *Toussie v. United States,* 397 U.S. 112, 114–15, 90 S.Ct. 858, 859–60, 25 L.Ed.2d 156 (1970), stated:

> The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions. Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past.

*See United States v. DiSantillo,* 615 F.2d 128 (3d Cir.1980). The purposes of a time bar are not offended by a knowing and voluntary waiver of the defense by the defendant.[3]

### III

The defendant's other major claim is that the district court erred in not dismissing the conspiracy count of the indictment for failure to allege that the defendant committed an overt act in furtherance of a conspiracy.

■ We recognize that the government must prove the commission of an overt act to secure a conspiracy conviction. *United States v. Anderson,* 542 F.2d 428 (7th Cir. 1976). The defendant concedes that the government proved such an act at trial. His argument is that reversal is required because the overt act was inadequately charged.

**3.** The defendant raises other minor issues regarding his waiver. The district court dismissed these claims when they were presented in pretrial and post-trial motions. We affirm. The issues do not merit thorough discussion; we note only that the defendant was not adversely affected in any way by any alleged breach of agreement by the government.

The conspiracy count specifies seventeen overt acts. The defendant relies on his statute of limitations defense to invalidate overt acts one through fourteen, which all occurred before or during the period covered by the first waiver. For overt acts fifteen through seventeen, the defendant argues that the acts alleged were merely "caused," and not "committed," by the defendant. That, the defendant argues, is insufficient to sustain a charge of conspiracy. Because we have rejected the defendant's argument that he could not waive the statute of limitations, we consider all of the seventeen overt acts in determining whether the conspiracy count was valid.

 We believe that the indictment adequately alleged an overt act. Counts eight through twelve, for example, allege that the "defendants did submit and cause to be submitted ... default claim[s] ... to the U.S. Department of Health, Education & Welfare ...." These allegations satisfy any requirement for pleading overt acts. We do not need to probe any further into the sufficiency of the seventeen allegations.[4]

### IV

The statute of limitations relevant to this action does not pose a jurisdictional bar to prosecution. The defendant voluntarily and knowingly executed a valid waiver of that statute. Therefore, the acts falling within the time period encompassed by the waiver were validly charged in the indictment. Moreover, the indictment sufficiently alleged overt acts committed in furtherance of a conspiracy to defraud the government. Accordingly, the district court's judgment of conviction is affirmed.

AFFIRMED.

---

4. The overt acts illustrated in the text conclusively defeat the defendant's claim. We note, nevertheless, that overt acts fifteen through seventeen, which allege that "the defendants caused to be delivered by the U.S. Postal Service to the Bell & Howell Industrial Bank ... U.S. Treasury Check[s] ....", satisfy overt act pleading requirements. *See, e.g., Davis v. United States,* 86 F.2d 45 (5th Cir.1936), *cert.* denied, 300 U.S. 657, 57 S.Ct. 433, 81 L.Ed. 867 (1937) ("Overt acts need not be pleaded with the fullness that would be necessary if they were themselves charged as crimes."); *United States v. McClarty,* 191 F. 518 (W.D.Ky.1911) ("[T]he conspirator must himself 'do' the 'act' or give authority to another to do that particular thing for him.").