*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0207P (6th Cir.)
File Name: 04a0207p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,
    *Plaintiff-Appellant,*

    *v.*    No. 03-5829

RICHARD TITTERINGTON, et al.,
    *Defendants-Appellees.*

───────────────

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 02-20165—Bernice B. Donald, District Judge.

Argued: April 20, 2004

Decided and Filed: July 6, 2004

Before: BOGGS, Chief Judge; NELSON and SUTTON,
Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Dan L. Newsom, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellant. Robert W. Ritchie, RITCHIE, FELS & DILLARD, Knoxville, Tennessee, for Appellees. **ON BRIEF:** Dan L.

Newsom, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellant. Robert W. Ritchie, Wade V. Davies, Stephen Ross Johnson, RITCHIE, FELS & DILLARD, Knoxville, Tennessee, Richard M. Carter, MARTIN, TATE, MORROW & MARSTON, Memphis, Tennessee, Richard M. Steingard, Los Angeles, California, Glen G. Reid, Jr., WYATT, TARRANT & COMBS, Memphis, Tennessee, Kemper B. Durand, THOMASON, HENDRIX, HARVEY, JOHNSON & MITCHELL, Memphis, Tennessee, William D. Massey, Lorna S. McClusky, MASSEY & McCLUSKEY, Memphis, Tennessee, for Appellees.

SUTTON, J., delivered the opinion of the court, in which BOGGS, C. J., joined. NELSON, J. (p. 14), delivered a separate opinion concurring in the judgment and in the opinion of the court.

───────────────

## OPINION

───────────────

SUTTON, Circuit Judge. As this case comes to the court, all agree that a federal indictment need not specifically state that the charged offenses occurred within the pertinent statute-of-limitations period; it suffices that the indictment alleges facts establishing that the offense occurred within the limitations period. What happens, however, when the Government obtains permission to toll the limitations period? Must the Government in that setting specifically allege that the limitations period has been tolled or otherwise allege that the indictment covers offenses that occurred within the extended limitations period? The district court said yes; we say no. Contrary to the views of the district court, we conclude that the statute of limitations is an affirmative defense that the Government need not specifically plead in a criminal indictment. We therefore reverse the district court's

judgment in favor of the defendants and remand the case for further proceedings.

## I.

In January 1996, the FBI began an investigation of the defendants in this case—Richard Titterington, Geoffrey Feldman, Sherrie-Lee Doreen Cave, Robert Murray Bohn, Stacy Layne Beavers and Michael Elliot Cole—regarding their involvement with a Barbados-based entity known as IDM. According to the United States, the defendants and IDM ran an international lottery operation, which defrauded United States citizens of more than $100 million. Believing that IDM's Bridgetown, Barbados headquarters held evidence of this criminal conduct, the Office of International Affairs of the Department of Justice obtained a warrant from the Barbados government in June 1996 to search IDM's headquarters. Barbados authorities, assisted by the FBI, executed the warrant on July 12, 1996, seizing approximately 140 boxes of evidence that were "significant to the . . . on-going FBI investigation." JA 498.

After the search, IDM officials challenged the validity of the warrant. A local Barbados court ordered that the evidence remain in Barbados pending a hearing as well as any appeal, then placed the evidence under seal, which in this instance meant locking the 140 boxes of evidence in a jail cell. The evidence remained in the jail cell at the time the district court entered judgment in this case, and it remains there today.

Claiming that the evidence it needed to prosecute these defendants was itself in prison, the United States filed an ex parte motion in federal district court on December 9, 1998, to toll the limitations period for these alleged criminal offenses. Under the mail fraud, RICO and anti-smuggling statutes, a five-year limitations period generally governs criminal allegations under these provisions. *See* 18 U.S.C. § 3282(a). But a separate federal statute permits the Government "before return of an indictment" to file an application "indicating that

evidence of an offense is in a foreign country" and requesting that the limitations period be extended. *Id.* § 3292(a)(1). Under this second statute, if "the court finds by a preponderance of the evidence that an official request has been made for such evidence and that it reasonably appears . . . that such evidence is . . . in such foreign country," the court must "suspend the running of the statute of limitations" until "the foreign court or authority takes final action on the request," but for no longer than three years. *Id.* § 3292(a)(1), (b) & (c)(1). As the Barbados court appeared nowhere near taking "final action" in the evidentiary matter, the district court granted the motion to suspend the statute of limitations for up to three years.

On May 8, 2002, a federal grand jury returned an 89-count indictment against the six defendants involved in this appeal and 11 other co-defendants who remain outside United States jurisdiction and for whom extradition requests have been lodged with various countries. The indictment charged the defendants with violations of 18 U.S.C. § 1962(c) (substantive RICO), 18 U.S.C. § 1962(d) (RICO conspiracy) and 18 U.S.C. § 1341 (mail fraud). In addition, the indictment charged that one of the defendants, Feldman, violated 18 U.S.C. § 545 (smuggling).

Defendants moved to dismiss the indictment, arguing that an indictment must allege that an offense occurred within the applicable statute-of-limitations period. The district court (through the same judge who granted the Government's tolling motion) granted the defendants' motion to dismiss. "[T]o be facially sufficient," the court noted, an indictment must "contain each essential element of each offense charged," must "provide notice to the defendant of the charges against him" and must provide "information sufficient to protect the defendant against double jeopardy." JA 500–01. At the same time, the court added, an indictment need not "negate defensive matters . . . nor . . . anticipate affirmative defenses." JA 501. Recognizing that one might naturally think of the statute of limitations as a "defense" that

falls outside of the pleading requirements for a facially valid indictment, the district court nonetheless concluded that "the statute of limitations cannot be construed as a mere affirmative defense or defensive matter" because in this Circuit the statute-of-limitations argument may be made for the first time on appeal. *See United States v. Crossley*, 224 F.3d 847, 858 (6th Cir. 2000). Construing the statute of limitations as a "jurisdictional bar" and finding no allegation in the indictment that the crimes occurred within the limitations period or that the limitations period had been tolled, the court held that it lacked "jurisdiction over this matter" and that "the indictment must be dismissed." JA 501–02. The Government appealed.

## II.

### A.

The appropriate standard for reviewing a district court's decision whether to dismiss an indictment is not entirely clear. As the parties observe, we have treated the issue differently at different times, in some cases describing our task as abuse-of-discretion review, in other cases describing our task as de-novo review. *Compare, e.g., United States v. DeZarn*, 157 F.3d 1042, 1046 (6th Cir. 1998) (de novo), *with United States v. Middleton*, 246 F.3d 825, 841 (6th Cir. 2001) (abuse of discretion). In this case, as in many cases involving an allegedly flawed indictment and as the parties themselves here agree, the distinction does not make a difference, as an error of law compels a reversal under either standard of review. *See United States v. Taylor*, 286 F.3d 303, 305 (6th Cir. 2002) ("[A]n erroneous legal determination is always an abuse of discretion.").

### B.

In federal court, a criminal defendant "shall [not] be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury," U.S. Const.

amend. V, and the defendant "shall enjoy the right . . . to be informed of the nature and cause of the accusation," U.S. Const. amend. VI. Consistent with these constitutional commands, Rule 7(c)(1) of the Federal Rules of Criminal Procedure says that an "indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." An indictment complies with all of these requirements, the Supreme Court has held, if it (1) "contains the elements of the offense charged," (2) "fairly informs a defendant of the charge against which he must defend" and (3) "enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974).

While an indictment must satisfy these three notice-related requirements, "[i]t has never been thought that an indictment, in order to be sufficient, need anticipate affirmative defenses." *United States v. Sisson*, 399 U.S. 267, 288 (1970). "[A]n indictment . . . founded on a general provision defining the elements of an offense . . . need not negative the matter of an exception made by a proviso or other distinct clause . . . . [I]t is incumbent on one who relies on such an exception to set it up and establish it." *McKelvey v. United States*, 260 U.S. 353, 357 (1922); *see Evans v. United States*, 153 U.S. 584, 590 (1894) ("Neither in criminal nor in civil pleading is [the Government] required to anticipate or negative a defense.").

In addition to giving general guidance that the elements of a criminal charge must be in the indictment while allegations negating the elements of an affirmative defense need not be, the Supreme Court has held that a statute-of-limitations claim falls on the affirmative-defense side of the line. In *United States v. Cook*, 84 U.S. 168 (1872), a grand jury indicted a paymaster in the Army under an act of Congress making it a crime to embezzle public funds. A different statute imposed a two-year limitations period on the offense but also provided that the limitations period did not "extend to any person or persons fleeing from justice." *Id.* at 173. Arguing that "it

appears on the face of the indictment . . . that the crime charged . . . was committed more than two years before the indictment," the paymaster "demurred" to the indictment—which is to say, he admitted the allegations in the indictment, then argued that he could not be convicted even if they were true. *Id.* at 172.

The Supreme Court rejected the argument, holding that a defendant may not "by demurrer [] set up the statute of limitations as a defence" just "because another act of Congress provides that no person shall be prosecuted, tried, or convicted of the offence unless [] indict[ed] . . . within two years." *Id.* at 178. "Accused persons may avail themselves of the statute of limitations by special plea [*i.e.*, by raising an affirmative defense] or by evidence under the general issue [*i.e.*, by presenting evidence at trial]," the Court explained, "but courts . . . will not quash an indictment because it appears on its face that it was not found within the [limitations] period . . . as such a proceeding would deprive the prosecutor of the right to reply or give evidence, as the case may be, that the defendant fled from justice and was within the exception [to the limitations period]." *Id.* at 179–80. Nor would a "different rule [] apply . . . if the statute of limitations did not contain any exception," the Court continued, because time is not an element of the offense. *Id.* at 180; *see also Biddinger v. Comm'r of Police*, 245 U.S. 128, 135 (1917) ("The statute of limitations is a defense and must be asserted on the trial by the defendant in criminal cases.").

More than a century later, *Cook* remains good law and governs the outcome of this dispute. In this case, as in *Cook*, the statute defining the offenses does not contain a statute of limitations, but "another act of Congress" does. As in *Cook*, that other act sets forth a limitations period, which contains an exception. And, as in *Cook*, a court may not dismiss an indictment just "because it appears on its face that it was not found within the [limitations] period" because to do so "would deprive the prosecutor of the right to reply or give evidence, as the case may be, that the defendant . . . was

within the exception [to the limitations period]." 84 U.S. at 179–80. Nor, as in *Cook*, would a "different rule [] apply . . . even if the statute of limitations did not contain any exception," *id.* at 180, as time is not an essential element of a mail-fraud, RICO or smuggling offense. As *Cook* makes clear, the statute of limitations for mail-fraud, RICO and smuggling prosecutions does not impose a pleading requirement on the Government, but merely creates an affirmative defense for the accused.

### III.

Defendants raise several challenges to this conclusion, all unconvincing. At oral argument, defendants claimed that *Cook* is a relic of common-law pleading and has no application to the modern Federal Rules of Criminal Procedure. But to say that *Cook* does not control because it spoke of "demurrers," "special pleas" and "evidence under the general issue" instead of using the up-to-date terminology of the Federal Rules gives too much credit to linguistic trends and too little credit to the stability of the law. All of these antiquated terms of course have modern analogues, just as today's terminology is apt one day to have future analogues of its own. In this case, for example, a pretrial motion alleging a "defect in the indictment" under the Federal Rules, *see* Fed. R. Crim. P. 12(b)(3)(B), represents the modern equivalent of a "demurrer" because both pleadings serve to attack the facial validity of the indictment. *See United States v. Ponto*, 454 F.2d 657, 660 (7th Cir. 1971) ("In 1946, the Federal Rules of Criminal Procedure abolished the use of common law procedures such as a demurrer and plea in abatement and substituted in their place the motion to dismiss the indictment under Rule 12."). Because a demurrer and a motion alleging a defect in the indictment perform the same core function, *Cook*'s essential holding—that the statute of limitations concerns an affirmative defense (which need not be pled), not an element of the offense (which must be pled)—has continuing currency under the Federal Rules. *See United States v. Parrino*, 203 F.2d 284, 287 (2d Cir. 1953) (L.

Hand, J.) ("Rule 12(a) abolished all defensive pleadings except 'not guilty,' and provided that 'defenses . . . which heretofore could have been raised' by demurrer 'shall be raised only by motion to dismiss.' From that it follows that, since the question decided in *United States v. Cook* [] could not be raised by demurrer under the old practice, it may not now be raised by motion to dismiss and, if so, it must be raised by the plea of 'not guilty.'").

The defendants next argue that, no matter what *Cook* says, this Circuit has determined that the statute of limitations contained in 18 U.S.C. § 3282 is not merely defensive but is "jurisdictional," which supports the district court's ruling. As defendants correctly observe, *United States v. Crossley*, 224 F.3d 847, 858 (6th Cir. 2000), held that "absent an explicit waiver, the statute of limitations [under § 3282] presents a bar to prosecution that may be raised for the first time on appeal." Relying on *Crossley* and echoing the district court's reliance on *Crossley*, defendants argue that the statute of limitations must be jurisdictional because a defendant may raise it for the first time on appeal, which in turn means that the Government must *plead* the statute of limitations in order to vest the district court with "jurisdiction" over the indictment.

*Crossley* does not support this string of inferences. It does not say anything about what an indictment must contain, let alone mention the Supreme Court's *Cook* decision. Nor does it say that a statute of limitations is "jurisdictional."

Although *Crossley* says that the statute of limitations may be raised for the first time on appeal, not every issue that may be raised for the first time on appeal is jurisdictional. Just this Term, the Supreme Court highlighted the flaw in this reasoning. In *Kontrick v. Ryan*, 124 S. Ct. 906, 915 (2004), the Court observed that just because "[a] litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action, even initially at the highest appellate instance," and just because "a debtor may challenge a creditor's objection to a discharge as untimely . . . at any

time in the proceedings, even initially on appeal," does not mean that the rules governing the timeliness of a creditor's objection "have the same import as provisions governing subject-matter jurisdiction." A "critical difference" between subject-matter jurisdiction and the timing rules at issue in *Kontrick*, the Court explained, is that the former "cannot be expanded to account for parties' litigation conduct" and the latter can be. *Id.* at 916. Courts "have more than occasionally used the term 'jurisdictional' to describe emphatic time prescriptions," the Court noted, but the label "can be confounding" because such prescriptions do not generally affect personal or subject-matter jurisdiction. *Id.* at 915 (quotation and citation omitted); *see also Scarborough v. Principi*, 124 S. Ct. 1856, 1858 (2004).

In challenging the district court's jurisdiction over this criminal indictment, the defendants make a similar mistake. The federal courts' subject-matter jurisdiction to hear federal criminal prosecutions comes from 18 U.S.C. § 3231, which grants "[t]he district courts of the United States . . . original jurisdiction . . . of all offenses against the laws of the United States." A true jurisdictional problem—say, the Federal Government prosecutes a defendant for a non-federal crime—cannot be waived or altered by the parties' conduct during the proceeding. As mail fraud, RICO and smuggling are "offenses against the United States," however, § 3231 grants the district courts jurisdiction—the power to hear the case—no matter how much time elapsed between the criminal conduct and the criminal indictment and no matter what the Government ultimately proves or fails to prove. *See United States v. Rayborn*, 312 F.3d 229, 231 (6th Cir. 2002) (holding that the interstate-commerce requirement of the federal arson statute "is not jurisdictional in the sense that it affects a court's subject-matter jurisdiction, *i.e.*, a court's constitutional or statutory power to adjudicate a case"); *Hugi v. United States*, 164 F.3d 378, 380 (7th Cir. 1999) ("Subject-matter jurisdiction in every federal criminal prosecution comes from 18 U.S.C. § 3231, and there can be no doubt that Article III permits Congress to assign federal criminal prosecutions to

federal courts. That's the beginning and the end of the 'jurisdictional' inquiry.").

Were the statute of limitations jurisdictional in the sense that defendants claim, moreover, an individual could not explicitly waive its protection, *see United States v. Cotton*, 535 U.S. 625, 630 (2002) ("subject-matter jurisdiction . . . . can never be forfeited or waived"), which *Crossley* itself says a defendant can do and which many defendants desire to do. For example: some defendants plead guilty to a time-barred lesser offense with a shorter limitation period in exchange for the Government dropping charges on a greater offense with a longer limitation period; other defendants request jury instructions on a time-barred lesser offense to avoid giving the jury an all-or-nothing-at-all choice. *See Spaziano v. Florida*, 468 U.S. 447, 454–57 (1984) (suggesting that a capital defendant has a due process right to a jury instruction on a time-barred lesser included offense so long as he waives the statute of limitations for that offense). All of this explains why the federal courts of appeals that have addressed this issue uniformly agree that the statute of limitations provides an affirmative defense that the defendant may waive. *See United States v. Soriano-Hernandez*, 310 F.3d 1099, 1103–04 (8th Cir. 2002); *United States v. Najjar*, 283 F.3d 1306, 1309 (11th Cir. 2002); *Acevedo-Ramos v. United States*, 961 F.2d 305, 307 (1st Cir. 1992); *United States v. Cooper*, 956 F.2d 960, 962 (10th Cir. 1992); *United States v. Arky*, 938 F.2d 579, 581–82 (5th Cir. 1991); *United States v. DeTar*, 832 F.2d 1110, 1114 (9th Cir. 1987); *United States v. Karlin*, 785 F.2d 90, 92–93 (3d Cir. 1986); *United States v. Meeker*, 701 F.2d 685, 687–88 (7th Cir. 1983); *United States v. Walsh*, 700 F.2d 846, 855–56 (2d Cir. 1983); *United States v. Williams*, 684 F.2d 296, 299–300 (4th Cir. 1982); *United States v. Wild*, 551 F.2d 418, 421–25 (D.C. Cir. 1977).

Had *Crossley* said what the defendants claim it said—a court lacks subject-matter jurisdiction if the indictment does not plead the statute of limitations—*Crossley* no longer would be good law. As the Supreme Court recently held in

*Cotton*, "defects in an indictment do not deprive a court of its power to adjudicate a case" and thus are not "jurisdictional." 535 U.S. at 630–31.

Neither does *Crossley* say that because failing to *prove* compliance with the statute of limitations establishes a "bar to prosecution," *pleading* the statute of limitations must be mandatory (even if it is not jurisdictional). The Double Jeopardy Clause and the Ex Post Facto Clause also establish a bar to criminal prosecution. Yet no case to our knowledge mandates that indictments must allege that the Government did not previously prosecute the defendant for the same offense or that the defendant completed the crime after Congress criminalized the conduct. If these constitutional defenses do not alter the normal rules for pleading crimes, it is hard to understand why this statutory defense should do so.

The Tenth Circuit's decision in *United States v. Gammill*, 421 F.2d 185 (1970), does not suggest otherwise. There, the court held that a district court lacked authority to amend an indictment that omitted the year in which the alleged crime took place, without first submitting the new indictment to a grand jury. *Id.* at 186. Here, in marked contrast, the indictment *does* mention the year in which the alleged crimes took place and that year falls within the eight-year limitations period (five years plus three years) under 18 U.S.C. §§ 3282 & 3292.

Even if a run-of-the-mill indictment need not mention the statute of limitations, defendants argue that "tolling" cases are different and require the Government to allege that "the limitations period for this crime was tolled for three years" or perhaps that "the prosecution would comply with the statute of limitations as computed under 18 U.S.C. §§ 3282 & 3292." But the defendants offer no pertinent authority for this proposition and fail to explain why *Cook*, which itself involved an exception to the statute of limitations (for a fleeing felon), does not squarely control the outcome of this case.

## IV.

  For the foregoing reasons, we reverse the district court's judgment dismissing the indictment and remand the case for further proceedings consistent with this opinion.

_____

## CONCURRENCE

_____

  DAVID A. NELSON, Circuit Judge, concurring.  I fully concur in the judgment and in Judge Sutton's opinion for the court.  Perhaps it would not be amiss, however, for me to add a word on the question of our standard of review, given the tension between my unqualified assertion in *United States v. Powell*, 823 F.2d 996, 1001 (6th Cir. 1987), that "[w]e review a district court's refusal to dismiss an indictment only for abuse of discretion" and my unqualified concurrence in Judge Rosen's opinion in *United States v. DeZarn*, 157 F.3d 1042 (6th Cir. 1998), which asserted that "[t]he sufficiency of the indictment is reviewed *de novo*."  *Id* at 1046.

  I suppose a pedant could claim that *Powell* is not directly in point here, the case at bar not being one that gives us occasion to "review a district court's refusal to dismiss an indictment . . . ."  But were it not for the fact that, as Judge Sutton has generously pointed out, "an erroneous legal determination is always an abuse of discretion," see *United States v. Taylor*, 286 F.3d 303, 305 (6th Cir. 2002), I would be hard pressed to deny that the logic of my statement in *Powell* is at odds with the logic of Judge Rosen's statement in *DeZarn*.  And I am at a loss to know what I could have been thinking of when I said what I said in *Powell*; the *Powell* statement (which I must have expunged from my memory in the ensuing decade) now strikes me as wide of the mark, while Judge Rosen's statement in *DeZarn* strikes me now — as it did when I concurred in it — as right on target.