**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0484n.06
Filed: August 12, 2008

No. 06-5658

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| MARK ALLEN HARPER, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| ERIC JACKSON, individually and in his | ) | STATES DISTRICT COURT FOR THE |
| official capacity as Sergeant, Paducah Police | ) | WESTERN DISTRICT OF KENTUCKY |
| Department; NATHAN YOUNG, individually | ) | |
| and in his official capacity as Drug Officer, | ) | |
| Paducah Police Department, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

Before: MERRITT, GILMAN, and COOK, Circuit Judges.

COOK, Circuit Judge. Pro se § 1983 plaintiff Mark Allen Harper sued the defendant police officers, alleging that in 2003 they detained him and searched his residence in violation of the Fourth Amendment. After the officers discovered drug paraphernalia and marijuana, Harper pleaded guilty to possession charges. In *Heck v Humphrey*, 512 U.S. 477 (1994), the Supreme Court barred § 1983 actions for damages where a favorable judgment would necessarily impugn the validity of an outstanding criminal conviction. *Id.* at 487. This case asks whether the district court correctly invoked *Heck* to bar Harper's Fourth Amendment claims where he avoided trial by pleading guilty. Because we cannot say that Harper's convictions for drug possession would be impugned by

concluding that the officers obtained the evidence illegally, we hold that *Heck* does not bar his

Fourth Amendment claims. We therefore reverse the judgment of the district court and remand for

further proceedings consistent with this opinion.

## I. BACKGROUND

The parties do not dispute the pertinent facts, which the district court set forth as follows:

> On July 31, 2003, Officer [Eric] Jackson responded to a call from a Wal-Mart security employee, who reported that Harper had purchased meth precursors. Officer Jackson then went to Harper's house and detained him for four hours while obtaining a search warrant, which Harper alleged was based "on no probable cause." After securing the search warrant, both Officers Jackson and [Nathan] Young searched Harper's house, and Officer Jackson arrested Harper and charged him with unlawful possession of meth precursors; trafficking in marijuana, 8 oz. to < 5 lbs.; and use/possession of drug paraphernalia. "This whole time," claimed Harper, "Mr. Jackson cuffed me and denied me my right to speak to counsel."
>
> . . . .
>
> As to the disposition of the 2003 charges, the state district court dismissed the charge of possession of meth precursors on August 7, 2003, on motion of the prosecutor. The felony trafficking in marijuana charge was amended to a misdemeanor charge of possession of marijuana, and on June 8, 2004, Harper entered [a] plea of guilty to the reduced charge of possession of marijuana and to the remaining misdemeanor charge of use/possession of drug paraphernalia. . . . The McCracken Circuit Court entered final judgment and sentence on November 3, 2004, to all charges to which Harper pled guilty.

*Harper v. Jackson*, No. 05 CV00004, slip op. at 2–3 (W.D. Ky. May 13, 2005).

Harper filed a § 1983 complaint on January 4, 2005, alleging that the defendant police

officers violated the Fourth Amendment when they detained him and searched his residence in 2003.

The district court, however, granted summary judgment for the defendants, concluding that a judgment in Harper's favor would necessarily impugn the validity of Harper's outstanding guilty-plea convictions because the defendants discovered the marijuana and drug paraphernalia during the contested search. *See Heck v. Humphrey*, 512 U.S. 477, 487 (1994) (barring a § 1983 claim unless the plaintiff can demonstrate that a related, outstanding conviction is no longer valid).

We review de novo this grant of summary judgment, affirming if the evidence, viewed in the light most favorable to the non-movant, demonstrates that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Crosby v. Rohm & Haas Co.*, 480 F.3d 423, 427 (6th Cir. 2007).

## II. ANALYSIS

In *Heck*, the Supreme Court held that a plaintiff could not bring a § 1983 action if a favorable judgment "would necessarily imply the invalidity of his conviction or sentence; if [so], the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated" by executive order, reversal on direct appeal, or writ of habeas corpus. 512 U.S. at 487. Specifically, we ask whether success in a § 1983 suit would "negate an element of the offense." *Id.* at 486 n.6. The *Heck* bar exists because the Court's respect for "finality and consistency" precludes a prisoner's use of § 1983 to collaterally attack an outstanding conviction. *Id.* at 486. We turn, then, to the question of whether success on Harper's claims would necessarily imply the invalidity of his convictions, and we conclude that they would not.

### A. Fourth Amendment Violations under *Heck*

By way of a now well-known footnote, the *Heck* Court observed that even if successful, some Fourth Amendment claims brought under § 1983 "would not *necessarily* imply that the plaintiff's conviction was unlawful" due to doctrines like independent source, inevitable discovery, and harmless error. *Id.* at 487 n.7. Some courts read *Heck* to suggest that as a rule, Fourth Amendment claims may proceed because they cannot impugn the validity of a conviction. *See, e.g.*, *Wallace v. City of Chicago*, 440 F.3d 421, 428 (7th Cir. 2006) (concluding that "the Fourth Amendment violation affects only the evidence that might or might not be presented to the trier of fact" and not the outstanding conviction); *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003) (same).

For now, however, the Supreme Court suggests that *Heck* will bar at least some Fourth Amendment claims. In *Wallace v. Kato*, 127 S.Ct. 1091 (2007), Justice Scalia voiced the majority's conclusion that "a Fourth Amendment claim can necessarily imply the invalidity of a conviction, and . . . if it does it must, under *Heck*, be dismissed."[1] *Id.* at 1099 n.5. Sixth Circuit precedent comports with that position, placing the onus on the district court to assess on a case-by-case basis whether a favorable Fourth Amendment judgment would impugn the validity of an outstanding conviction.

---

[1] *Wallace* also clarified that *Heck* does not delay the accrual of an otherwise complete and present cause of action when a judgment in the plaintiff's favor "would impugn *an anticipated future conviction*." 127 S. Ct. at 1098. Harper's claims thus accrued on July 31, 2003, the date of the alleged illegal search and seizure. *Id.* Under Kentucky's one-year statute of limitations for personal injury, Harper's claims would be untimely. The defendants forfeited this affirmative defense, however, by failing to raise it on appeal. *Smith v. State of Ohio Dep't of Rehab.& Corr.*, 463 F.3d 426, 429 n.2 (6th Cir. 2006); *United States v. Titterington*, 374 F.3d 453, 458 (6th Cir. 2004).

*E.g.*, *Schilling v. White*, 58 F.3d 1081, 1086 (6th Cir. 1995); *Jackim v. City of Brooklyn*, No. 1:05 cv 1678, 2007 WL 893868, at *7 n.11 (N.D. Ohio Mar. 22, 2007) (unpublished).

Although *Heck* bars § 1983 Fourth Amendment claims where the contested search produced the *only* evidence supporting the conviction and no legal doctrine could save the evidence from exclusion, *see, e.g.*, *Ballenger v. Owens*, 352 F.3d 842, 847 (4th Cir. 2003); *Covington v. City of New York*, 171 F.3d 117, 123 (2d Cir. 1999), the case before us is distinct. If Harper succeeds on his § 1983 claims, his conviction would not necessarily be impugned because both the doctrine of inevitable discovery and the *Leon* good faith exception apply. *See United States v. Leon*, 468 U.S. 897, 913 (1984) (adopting a "good faith" exception to the exclusionary rule where police seize evidence in reasonable reliance on a warrant issued by a neutral magistrate).

Under the inevitable discovery doctrine, illegally obtained evidence is not subject to the exclusionary rule "if the government can prove by preponderance that the evidence inevitably would have been acquired through lawful means." *United States v. Kimes*, 246 F.3d 800, 804 (6th Cir. 2001) (quoting *United States v. Kennedy*, 61 F.3d 494, 497 (6th Cir. 1995)). In asking whether the inevitable discovery doctrine applies, we examine the circumstances "as they existed at the instant before the unlawful search" and ask "what would have happened had the unlawful search never occurred." *Kimes*, 246 F.3d at 804 (quoting *United States v. Eng*, 971 F.2d 854, 861 (2d Cir. 1992)). We apply the rule in two scenarios: (1) when an "independent, untainted investigation . . . inevitably would have uncovered the same evidence"; or (2) when "other compelling facts [exist] establishing

that the disputed evidence inevitably would have been discovered." *Kennedy*, 61 F.3d at 499. Here, the fact that a Wal-Mart security employee notified the police of Harper's purchase establishes that even if we were to conclude that the officers illegally detained Harper, success on the § 1983 claim would not necessarily impugn his conviction because the resulting discovery of the marijuana and drug paraphernalia would have inevitably occurred regardless of the detention. *See Heck*, 512 U.S. at 487 n.7.

Likewise, even were Harper to succeed on his claim that the warrant to search his home was without probable cause, that result would not necessarily impugn his conviction because even if the warrant were unlawfully obtained, the police acted in good faith reliance on the warrant as issued by a neutral magistrate, and thus the evidence could have been admitted to secure Harper's conviction. *See Leon*, 468 U.S. at 913.

Because we conclude that succeeding on his § 1983 claims would not necessarily imply that Harper's conviction was unlawful due to the doctrine of inevitable discovery and the *Leon* good faith exception, we conclude that *Heck* does not bar Harper's suit. We therefore reverse the district court's decision to the contrary and remand the case for further proceedings consistent with this opinion.

MERRITT, Circuit Judge, concurring. I agree with the result but not the reasoning in Judge Cook's opinion in this case. Judgment in favor of the plaintiff in this civil case for damages would not ordinarily affect the validity of the previous state criminal judgment. In *Heck v. Humphrey*, 512 U.S. 477, 487 (1994) (which was not a search and seizure case made non-cognizable in habeas corpus), the Court in *dicta* said that a § 1983 case for unreasonable searches "does not encompass the injury of being convicted and imprisoned" and "may lie even if the challenged search produced evidence" resulting in the earlier conviction. The recent case of *Wallace v. Kato*, 127 S. Ct. 1091 (2007), relied on in Judge Cook's opinion, is a statute of limitations case unrelated to the question before us. I, therefore, would not make the result dependent on an analysis of the "inevitable discovery" doctrine or the "good faith" exception or other methods of reducing the bite of the Fourth Amendment.

As a practical matter we need a relatively stable, clear, understandable rule for these § 1983, Fourth Amendment, constitutional tort cases. We do not need a who-knows-what-it-means, discretionary standard that says that the § 1983 cause of action may be dismissed in certain cases if the main evidence of criminal guilt was the product of a grossly illegal search. For example, if the police break into a doctor's office, as in the Daniel Ellsberg case, and find evidence of a patient's guilt, we should not dismiss the later constitutional tort action because the wrong produced crucial evidence in the criminal case. Otherwise, the more Gestapo-like the constitutional violation, the more likely that the Gestapo will get away unscathed. A vague, malleable, non-principled, discretionary standard seems hardly compatible with the text of the Fourth Amendment outlawing

unreasonable searches of the home.  Here we are dealing with a search of Harper's home, the very place the Founding Fathers were most concerned about protecting when they wrote and adopted a rule against unlawful searches.  In a controversial case, the <u>Nixon</u>-<u>Burger</u> Court, *see Stone v. Powell*, 428 U.S. 465 (1976), jettisoned the exclusionary rule in habeas cases by overruling in part the <u>Eisenhower</u>-<u>Warren</u> Court's decision in *Kaufman v. United States*, 394 U.S. 217 (1969).  I would not now jettison in constitutional tort cases most of the rest of the remedies the Fourth Amendment has heretofore been interpreted to provide when the police invade a person's home.  Nor would I water down the rule by creating a discretionary standard or multiple exceptions that depend on a judge's views about "inevitable discovery," "harmless error," or *Leon's* "good faith" exception.